**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James W. WILLIAMS, Defendant-**
**Appellant.**

**Nos. 26829, 26830.**

United States Court of Appeals,
Fifth Circuit.

March 26, 1970.

J. Edwin Smith, Houston, Tex., for appellant.

Morton L. Susman, U. S. Atty., James R. Gough, Malcolm R. Dimmitt, Asst. U. S. Attys., Houston, Tex., Jonathan S. Cohen, Atty., Tax Div., Dept. of Justice, Washington, D. C., Arthur F. Mathews, Stephen E. Gehring, Larry B. Grimes, Paul H. Metzinger, United States Securities and Exchange Commission, Washington, D. C., of counsel, for appellee.

Before RIVES, GOLDBERG and GODBOLD, Circuit Judges.

RIVES, Circuit Judge:

James W. Williams appeals from two judgments of conviction in closely related criminal cases. Williams was formerly Chairman of the Board of Westec,[1] and both criminal prosecutions were precipitated by the financial collapse of Westec which resulted in suspension of its stock from trading on the American Stock Exchange on August 26, 1966, and one month later in an order appointing a trustee of Westec in reorganization proceedings in the Southern District of Texas.

Case No. 107[2] was commenced by Grand Jury indictment and was tried to a jury for nearly a month, from June 17 to July 11, 1968, resulting in a verdict and judgment of guilty on thirteen counts, and in sentence to be served of ten years' imprisonment.

Case No. 233[3] was commenced by criminal information filed by the United States Attorney on September 12, 1968 (two months after the jury's verdict in Case No. 107). The information contained only one count, and was tried to the court without a jury on a stipulation of facts,[4] resulting in a judgment of conviction and a sentence to be served of an additional five years' imprisonment, or a total of fifteen years.

In Case No. 107, Count One charged Williams with conspiracy with three co-defendants to violate 15 U.S.C. §§ 77e(a), 78ff(a) and 18 U.S.C. §§ 1001 and 1341; the other twelve counts of which the Jury found Williams guilty charged substantive violations of the mail fraud statute, 18 U.S.C. § 1341. In Case No. 233, the one count criminal information alleged a conspiracy in violation of 18 U.S.C. § 371 by Williams and others to manipulate unlawfully the price of the common stock of Westec in violation of 15 U.S.C. § 78i (a) (1) and (2).

By various challenges, claimed defenses, and objections to the indictment and to the information, objections to the evidence, and a requested instruction to the jury, Williams preserved seven issues for review on appeal, which we will consider in the order in which they are briefed by the parties.

## I. Denial of Confrontation by Non-Production of Records.

■ Out of its logical, or chronological order, Williams presents as his first issue on appeal that he was denied his Sixth Amendment guaranty of confrontation when, over his objection, an expert witness was allowed to give opinion evidence based on extra-judicial investigation of records not themselves introduced in evidence.

In Case No. 107, each of the thirteen counts of the indictment on which Williams was convicted contained averments as to which evidence was relevant to prove the value of the net future earnings as of January 1, 1967 of certain producing oil and gas properties. In effect, the indictment charged that Westec had sold oil and gas properties to corporations controlled by co-conspirators at prices greater than their fair market value. To support those allegations, the witness Thomas Jeffrey testified as an expert on the valuation of the properties to the following opinions:

"A. My estimate of the future net earnings of Irving Properties as of 1-1-67 was $500,032.

\* \* \* \* \* \*

"A. My estimate as of January 1st, 1967, of the future net earnings

1. Western Equities, Inc., until May 1966, then renamed Westec Corporation—for convenience called Westec in this opinion.

2. Case numbered 26,829 in this Court, 68-H-107 in the district court, for convenience referred to in this opinion as Case No. 107.

3. Case numbered 26,830 in this Court, 68-H-233 in the district court, for convenience referred to in this opinion as Case No. 233.

4. We are informed that this procedure was adopted to preserve issues of law—See Martin v. United States, 5 Cir. 1968, 389 F.2d 895.

from Wilcrof, Incorporated, oil and gas properties was $44,469."

No question was raised as to Jeffrey's qualifications as an expert, but Williams repeatedly and strenuously objected because the records of the two corporations upon which the witness based his opinion were not themselves offered in evidence. As aptly expressed by defense counsel: " * · * * a proper predicate has not been laid for such an opinion. They have not produced the records concerning the earnings and the production upon which he is basing his opinion, nor the other supporting data and records that he said he had used in reaching his opinion. That is not in evidence to this date." [5] The able and careful district judge overruled the objection upon the following reasoning: [6]

"Well, with respect, first, to Jeffrey, that rightly or wrongly does not trouble me because Jeffrey is an expert witness, and while it might have been done differently, in my view all Mr. Jeffrey had to say was that I have studied the question and I have an opinion and that is my opinion. The rest of it is probing to satisfy or testing the validity of his opinion, and whatever is said or done in his investigation is simply a measure of the completeness or validity or accuracy or however you care to put it, of his investigation as related to his opinion on value."

The two appraisals made by the witness Jeffrey were marked as Government Exhibits X–4 and X–5. The issue may be more sharply defined by the proceedings when the Government offered those exhibits in evidence, which proceedings are quoted in the margin.[7]

---

5. Again at the close of the witness Jeffrey's testimony:

"Q. One other question, and your opinion is based upon these things that other people told you and records that other people showed you and information other people gave you about which I have been interrogating you?

"A. Yes.

"Mr. Smith: If the Court please, at this we move to strike this opinion and his evidence as to the evaluations on the *bases* [sic] that the Government did not lay a proper predicate. His opinions are unquestionably based upon hearsay and that to permit the evidence to go before this jury is a denial to Jim Williams of the right of confrontation guaranteed under the Constitution to see in open court the people who furnished these records and told them these facts.

"And it has been proven here that one of those men in each instance was Mr. Fred Hall, and that to permit this not be stricken from the record is to deny him constitutional right of confrontation and cross examination of the witnesses knowing the facts, to test them as to whether or not it is the truth.

"The Court: Overruled."

6. Stated in a discussion with the attorneys in chambers.

7. "Mr. Dimmitt: At this time, Your Honor, the government will offer into evidence Government Exhibits X–4 and X–5.

"Mr. Smith: Your Honor, I want to register an objection to Government's Exhibits X–4 and X–5, that the government has not laid the proper predicate for the admission of these documents into evidence, that they have not proved or produced the documents and records upon which his report, upon which these reports are based, nor any of the logs, production records, drilling records or anything else that he obtained from Wilcrof, Incorporated, or from Irving Petroleum Company, Incorporated, and that for such reason these exhibits would be based on hearsay and evidence to which, or matters to which this defendant has been denied the right of cross examination, and as to matters to which this defendant has, under the Constitution, been denied the right to confront in open court the witnesses who prepared such records and who submitted such records to this man for examination.

"The Court: May I see the documents?

"Sustain the objection to the exhibits. I have admitted the opinion of the witness because he has qualified himself. At least he has answered the questions to the jury as to the extent of his qualifications, which would entitle him to express an opinion. The quality of the opinion is a matter of weight.

"But these documents are not necessary, and might have some hearsay aspects. I will exclude them. The opinion of the witnesses in the record as to the ultimate question.

Further, just before excusing the witness Jeffrey subject to recall, the district court developed the fact that the records from which the appraisals were made remained in the witness' possession.[8] The witness was not recalled or requested to produce the records.

Williams' counsel bases his argument squarely on the Sixth Amendment guaranty of confrontation. We do not have the question of whether in a civil case, not affected by that guaranty, the expert's opinion evidence based on the records may have been admissible without prior introduction of the records themselves.[9]

In an eminent domain case this Circuit adopted the position of the Fourth Circuit in United States v. 5139.5 Acres of Land, etc., 200 F.2d 659, 662, that:

> "If the expert has made careful inquiry into the facts, he should be allowed to give them as the basis of the opinion he has expressed. If he had not made careful inquiry, this will be developed on cross examination and will weaken or destroy the value of the opinion. Ordinarily evidence as to facts of this sort given by an expert as the basis of his opinion as to value comes with a sufficient guaranty of

trustworthiness to justify the relaxation of the hearsay and best evidence rules."

International Paper Company v. United States, 5 Cir. 1955, 227 F.2d 201, 209.

Likewise, the Tenth Circuit has held that: "The rule is well established that an expert may testify as to value, though his conclusions are based in part, or even entirely, upon hearsay evidence." H. & H. Supply Co. v. United States, 10 Cir. 1952, 194 F.2d 553, 556.

The Government cites also United States v. Alker, 3 Cir. 1958, 260 F.2d 135, 155, 156, where a criminal tax fraud conviction was affirmed, but in that case the Sixth Amendment confrontation issue was not discussed or decided.

The Supreme Court has long recognized that the right of confrontation "must occasionally give way to considerations of public policy and the necessities of the case." Mattox v. United States, 1895, 156 U.S. 237, 243, 15 S.Ct. 337, 340, 39 L.Ed. 409.

Judge Tuttle for this Court in Matthews v. United States, 5 Cir. 1954, 217 F.2d 409, 418, discussed ably the effect of the Sixth Amendment right of confrontation on the admissibility of evi-

---

"Mr. Dimmitt: Recognizing the Court's full cognizance of this, Your Honor, we would limit the offer only to the fact that such an evaluation was performed and not as to the truthfulness of all of the matters contained therein, which may have some hearsay in it, and so limit the government offer.

"The Court: Any comment?

"Mr. Smith: We renew our objection, Your Honor, that the government is not entitled to put in this record matters for which they do not vouch for the truth.

"The Court: They may be put in the record and not passed to the jury, just a record of his having made such a report. He has already testified to that."

8. "The Court: Do you have the records assembled by you for the purpose of this evaluation?

"The Witness: Yes.

"The Court: He said he had the records from which the appraisals are made.

You may be excused subject to recall. You will be in Dallas, so leave your telephone number.

"(Witness excused.)"

9. The proposed Rules of Evidence for the United States District Courts and Magistrates provides in Rule 7–05:

"The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the judge requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."

The Advisory Committee's Note contains a valuable discussion on the subject as does an article by Professor Green, a distinguished member of the Committee, in Highlights of the Proposed Federal Rules of Evidence, 4 Ga.L.Rev. 1, 33, 34 (1969).

dence under exceptions to the hearsay rule, concluding:

"While the Sixth Amendment does not prevent creation of new exceptions to the hearsay rule based upon real necessity and adequate guarantees of trustworthiness, it does embody those requirements as essential to all exceptions to the rule, present or future."

*See* also the very full discussion in 5 Wigmore on Evidence, 3d ed. § 1397.

We come to the question of whether the facts and circumstances of this case are such that Williams' right of confrontation must "give way to considerations of public policy and the necessities of the case." Mattox v. United States, *supra*.

The witness Jeffrey testified that all data as to core analyses, well records, operating costs and the price of oil and gas were obtained from the records of the two companies. The witness simply accepted those records as correct and could not testify directly that they actually were correct.

"Q. Who told you that they were the correct records?

"A. No one told me they were the correct records.

"Q. How then do you know they were the correct records?

"A. I used my own best judgment from the records available as to the correctness of the records."

There was no proof that the records on which the witness relied were made and kept in such fashion as to meet the requirements of the Federal Business Records Act, 28 U.S.C. § 1732. We cannot escape the conclusion that Williams was denied his constitutional right to confront and cross-examine the witnesses who prepared and were the custodians of the records on which Jeffrey relied.

As the Supreme Court said in Pointer v. Texas, 1965, 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923:

"There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal."

Other recent Supreme Court decisions have emphasized the essential and fundamental importance to a fair trial of the right of confrontation and cross-examination.[10]

The fact that Jeffrey had the records from which the appraisals were made did not impose any duty on Williams to require that the records be brought in. Williams had theretofore repeatedly objected to the witness' testimony as to value until the records on which that testimony admittedly was based had been introduced in evidence. Jeffrey could not testify to the correctness of the records any more than he did, that is, that he used his own best judgment as to their correctness. The burden rested on the Government to prove the authenticity of the records and that burden could not be shifted to the defendant. In this case the defendant repeatedly and consistently insisted on his right to confront and cross-examine the witnesses who might testify as to the correctness of the pertinent records. There was never any indication of waiver of that right. That circumstance distinguishes the present case from Bruce v. United States, 5 Cir. 1965, 351 F.2d 318.

Williams was deprived of his constitutional right to confront and cross-examine the witnesses who might be offered by the Government to authenticate the records of the two companies on which the witness Jeffrey relied in making his value appraisals. For that error the

10. Douglas v. Alabama, 1965, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934; Brookhart v. Janis, 1966, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314; Barber v. Page, 1968, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255.

judgment of conviction in Case No. 107 must be reversed.

## II. Misuse and Abuse of the Investigative Powers Granted the Trustee in Sections 21(a) and 167 of the Bankruptcy Act, 11 U.S.C. §§ 44 and 567.

██ Williams terms the bankruptcy examination a public "Court of Inquiry," [11] which encompassed the period of the Grand Jury deliberations resulting in his indictment and brings into application the rulings of the Supreme Court in Estes v. Texas, 1965, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543, and Sheppard v. Maxwell, 1966, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, and Rideau v. Louisiana, 1963, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663. We find no real merit in the contention.

The applicable bankruptcy statutes are means of discovering useful information and not of adjudicating guilt. The examinations were necessarily extensive and searching and the hearings were public, and properly so. There was, however, no showing of such undue publicity as would prejudice the Grand Jury in its deliberations, or as might deny Williams his right to a fair trial. We agree with the district court that there was no sufficient proof that the Trustee misused his office for the purpose of precipitating the criminal indictment or for prejudicing Williams' right to a fair and impartial trial. In short, the evidence simply fails to sustain Williams' contention that the bankruptcy examination wrongfully or improperly prejudiced his constitutional rights. With Case No. 107 being reversed and remanded, the long period intervening after the bankrupcty examination and before any new trial makes it extremely unlikely that Williams' rights will be prejudiced by any publicity connected with those examinations.

## III. Successive Prosecutions and Res Judicata.

██ Williams argues that, since the Government could have proceeded by separate count in No. 107 for the offense charged in No. 233, his prosecution in No. 233 after he had been found guilty in No. 107 amounted to harassment. He urges that one or more of his short special pleas in bar to No. 233 [12] should have been sustained.

The claim of conspiracy to defraud by means of false and fraudulent statements and the mail frauds of which Williams was convicted in No. 107 were different from the conspiracy to unlawfully manipulate the price of the Westec stock charged in No. 233, and different evidence was required to prove guilt. We can find no harassment, unlawful splitting of conspiracies,[13] former jeopardy, res judicata, or other special defense in bar of the prosecution of No. 233.

## IV. Multiplicity of Conspiracies.

██ Count One of Case No. 107 charged a conspiracy, and that it was a part of the conspiracy, *inter alia*, to make use of the mails to sell securities, "to carry and cause to be carried through the mails" securities, and to devise a scheme and artifice to defraud by use of the mails, and that among the means by which the defendants would and did carry out the conspiracy was the use of the mails in furtherance of a scheme and artifice to defraud. The other twelve counts in Case No. 107 also charged that the defendants devised a scheme and artifice to defraud, and the final paragraph of each of said counts charged a separate particularized use of the mails for the

---

11. See Martin v. Texas, 1965, 382 U.S. 928, 929, 86 S.Ct. 307, 15 L.Ed.2d 340; Martin v. Beto, 5 Cir. 1968, 397 F.2d 741.

12. "1. The plea of former jeopardy.
"2. The plea of res judicata.
"3. The plea of Governmental election.

"4. The plea of Governmental carving.
"5. The plea against splitting of conspiracies.
"6. The plea against successive prosecutions."

13. *See* Powe v. United States, 5 Cir. 1926, 11 F.2d 598.

purpose of executing the aforesaid scheme and artifice to defraud. The distinction between the conspiracy count and the twelve substantive counts is made clear by the discussion in Isaacs v. United States, 8 Cir. 1962, 301 F.2d 706, 725.

> "The substantive offenses proscribed by Title 18 U.S.C.A. §§ 1341 and 1343 (mail fraud and fraud by wire) are closely related to a conspiracy, proscribed by Title 18 U.S.C.A. § 371. The distinguishing feature is that the former may be conceived by one person, and the mails or wire must be used for purpose of executing the scheme, while a conspiracy requires an agreement of two or more to violate the law, and at least one overt act in furtherance of the conspiracy."

As the Supreme Court said in Callanan v. United States, 1961, 364 U.S. 587, 593, 81 S.Ct. 321, 325, 5 L.Ed.2d 312:

> "The distinctiveness between a substantive offense and a conspiracy to commit is a postulate of our law. 'It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses.' Pinkerton v. United States, 328 U.S. 640, 643 [66 S.Ct. 1180, 1182, 90 L.Ed. 1489]. See also Pereira v. United States, 347 U.S. 1, 11 [74 S.Ct. 358, 364, 98 L.Ed. 435]."

Williams could be convicted under Count One, the conspiracy count, only by proving an agreement, express or implied, between himself and one or more of his co-conspirators to commit the unlawful act and proof was not necessary that that act was ever actually committed. As to the twelve substantive counts, the situation is reversed. An agreement between Williams and one or more of his co-defendants need not be proved, but proof is essential that Williams actually committed the unlawful act.

The indictment in No. 107 charges only one conspiracy and not multiple conspiracies as in Powe v. United States, 5 Cir. 1926, 11 F.2d 598.

 Williams next argues that the twelve substantive counts, though formally asserted under the mail fraud statute, 18 U.S.C. § 1341, in fact charged the offense proscribed in 15 U.S.C. § 77e(a), which reads:

> "(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—
>
> "(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or
>
> "(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale."

That statute, unlike section 77q(a), clearly makes each mailing the gist of the crime.[14] Likewise, each mailing in violation of the mail fraud statute, 18 U.S.C. § 1341, is a separate offense.[15] The penalties for the offenses are similar,[16] and the sentence in this case was within the range permitted by either. We need not decide whether the offense charged in the twelve substantive counts in Case No. 107 should have been laid under the Securities Act, 15 U.S.C. § 77e(a) or under the Mail Fraud Statute, 18 U.S.C. § 1341, for any error in that regard is not so material as to be ground for reversal of the conviction. Rule 7(c), Fed.R.Crim.P.

14. United States v. Hughes, S.D.N.Y.1961, 195 F.Supp. 795, 799; United States v. Van Allen, S.D.N.Y.1961, 28 F.R.D. 329.

15. Badders v. United States, 1916, 240 U.S. 391, 394, 36 S.Ct. 367, 60 L.Ed. 706.

16. Compare 18 U.S.C. § 1341 with 15 U.S.C. § 77x.

## V. Improper Venue.

 Williams insists that if the charges in the twelve counts which purport to charge substantive violations of the mail fraud statute had been brought independently of that statute, constitutional venue would lie in the District of Columbia where the documents were filed. He relies for that insistence on tax evasion cases.[17] In those cases, however, the offense was not complete until the false statements were filed. Congress "so carefully indicated the *locus* of the crime." *Travis, supra,* 364 U.S. at 636, 81 S.Ct. at 361, 5 L.Ed.2d 340. The language of 15 U.S.C. § 77e(a), which has been heretofore quoted, is entirely different—"to carry or cause to be carried through the mails," etc. That language, to our minds, more nearly comports with the wording of the mail fraud statute, 18 U.S.C. § 1341, and accurately defines a crime which can be committed wherever the mailing occurs.

As to the conspiracy count, venue lies where the agreement was made or where an overt act was performed.[18]

## VI. Vagueness in the Indictment.

This objection does not warrant extended discussion. Clearly, we think the indictment sufficiently apprised the defendant of what he must be prepared to meet and enabled him, in case of future prosecution, to plead with accuracy the defense of former acquittal or conviction. United States v. DeBrow, 1953, 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92.

## VII. Refusal of Instruction.

 The district court refused Williams' request to charge the jury as follows:

"The law required that Westec Corporation file with the Securities and Exchange Commission and that Westec Corporation send through the mails or other modes of transportation in interstate commerce various reports and documents such as annual reports, semi-annual reports, and quarterly reports. You are instructed therefore that you cannot convict the Defendant, James W. Williams, for doing, or causing to be done, as an officer of Westec Corporation, merely that which the law required him to do."

The authority relied on for that instruction is Parr v. United States, 1960, 363 U.S. 370, 390–392, 80 S.Ct. 1171, 4 L.Ed.2d 1277. The legally compelled mailing in *Parr* were mailings of valid and correct tax assessments, not of false documents.

The substantive counts in Case No. 107 charge that it was part of the scheme and artifice to defraud that the defendants would mail to the Securities and Exchange Commission, American Stock Exchange, financial institutions, brokerage companies, and the shareholders and prospective shareholders of Westec the annual, semi-annual and quarterly reports of Westec, which reports contained false, fraudulent and misleading statements and representations concerning the operating results of Westec and financial condition of Westec.

The indictment then takes up the several reports and describes the alleged omissions and false statements in each report. Certainly the *Parr* decision cannot have the effect of according immunity to any person for filing false reports merely because the law requires reports to be filed. The requested instruction might well have conveyed such a meaning to the jury. To say the least, it was highly misleading. The district court properly refused the instruction.

In case numbered 26,829 in this Court the judgment of conviction is reversed and the cause is remanded for further

---

17. Sansone v. United States, 1965, 380 U.S. 343, 354, 85 S.Ct. 1004, 1011, 13 L.Ed.2d 882; Travis v. United States, 1961, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed. 2d 340; United States v. Lombardo, 1916, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897.

18. Bellard v. United States, 5 Cir. 1966, 356 F.2d 437, 438; Miller v. Connally, 5 Cir. 1965, 354 F.2d 206, 208.

proceedings not inconsistent with this opinion. In case numbered 26,830 in this Court the judgment is affirmed.

Case No. 26,829—Reversed and remanded.

Case No. 26,830—Affirmed.