**UNITED STATES of America, .**
**Plaintiff-Appellee,**

**v.**

**J. C. SMOTHERS, Defendant-Appellant.**
**No. 17843.**

United States Court of Appeals,
Seventh Circuit.

Oct. 26, 1970.

Rehearing Denied Dec. 30, 1970.

Walter R. Stewart, Champaign, Ill., for defendant-appellant.

Henry A. Schwarz, U. S. Atty., East St. Louis, Ill., Jonathan J. Seagle, Asst. U. S. Atty., Danville, Ill., for plaintiff-appellee.

Before DUFFY and KNOCH, Senior Circuit Judges, and PELL, Circuit Judge.

DUFFY, Senior Circuit Judge.

Defendant Smothers was indicted and convicted by a jury on fourteen separate counts of mail fraud in violation of Title 18 U.S.C. § 1341, often referred to as the mail fraud statute.

The indictment alleged that the defendant intentionally and wilfully devised a scheme and artifice to defraud the First National Bank of Gorham, Illinois, and the First National Bank of St. Louis, Missouri, and that said scheme entailed the preparation of fictitious bills of lading showing rail shipments of coal and other documents as securities for notes payable to the First National Bank of Gorham, for which moneys were received. Further, that as a part of said scheme, defendant caused to be placed in the United States mails the items hereinbefore described, together with a letter signed by an officer of the First National Bank of Gorham and addressed to the First National Bank of St. Louis.

Prior to the date of the trial, defendant filed a motion to suppress a confession or statement made by him to agents of the Federal Bureau of Investigation in the month of January 1968. The trial judge denied this motion after a hearing.

Defendant also filed a post verdict motion for a judgment n.o.v. or, alternatively, for a new trial. After hearing oral arguments, the trial judge denied this motion.

The evidence disclosed that defendant founded the Southern Illinois Co-op Sales Company in 1955. From October 13, 1965 to June 1966, the defendant was the president of that company. During the autumn months of 1965, defendant directed his bookkeeper to prepare a false set of financial records for the company. He also directed an employee of the company to prepare false memorandum copies of bills of lading, assignments of non-existent accounts receivable, and other false documents relating to shipments and sales of coal to customers of the company. The sales and shipments referred to in these documents did not, in fact, occur.

Between January and June 1966, defendant's company obtained loans in excess of one million dollars from the First National Bank of Gorham, Illinois. The loans were secured largely by assignment of accounts receivable of the company of which defendant was president. The Gorham Bank transmitted the documents

by mail to the First National Bank of St. Louis, Missouri, which bank, according to a participation agreement between it and the First National Bank of Gorham, provided the funds for the loans which were made to defendant's company. There were fourteen mailings of such documents between January 26, 1966 and June 22, 1966.

During the period from November 1965 to June 1966, representatives of the St. Louis bank visited defendant's company at Marion, Illinois at intervals of six weeks or less. Defendant usually was present during such visits. The representatives of the bank were shown the financial records of the Company which were false and which had been prepared at the direction of defendant Smothers.

On January 5, 1968, the defendant, together with two attorneys, appeared at the F.B.I. offices to give a statement to three F.B.I. agents. Attorney Goldenhersh departed voluntarily before defendant gave his statement and Attorney Stuckwisch (according to the post-trial affidavits) remained, although in a different room from where the interrogation took place. Defendant's statement was in the nature of a confession although not signed by him.

■ Defendant argues that the admission into evidence of his statement to the F.B.I. agents violated the requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. We disagree. The defendant and his attorney came to the United States Attorney's office on January 5, 1968 by pre-arrangement to give a statement to the F.B.I. Defendant admitted, on the motion to suppress, that he had been advised of his rights by agent Graper and understood them prior to giving any statement. Defendant was not compelled to remain at the F.B.I. offices but could have left any time he wished. The indictment against defendant was not returned until more than six months later.

Under these circumstances it is apparent that defendant was not "in custody" within the meaning of the Miranda rule. Freije v. United States, 408 F.2d 100 (1 Cir., 1969), United States v. Weston, 417 F.2d 181 (4 Cir., 1969), Archer v. United States, 393 F.2d 124 (5 Cir., 1968).[1]

■ Defendant submitted some post-trial affidavits in which it is alleged for the first time that the F.B.I. agents refused to allow defendant's attorney Stuckwisch to be present at the time of the interview at the F.B.I. office. Aside from the inapplicability of the Miranda rule to these facts as previously discussed, we need not review this claim at all, since this matter was within defendant's knowledge all along, and he apparently consciously refrained from bringing it to the Court's attention at all stages prior to the post-trial proceedings.

■■ Although we have found that there were no Miranda violations in the present case, we shall further review defendant's claim that his confession was not voluntarily given due to an alleged promise of immunity. We recognize and shall apply the well-established rule that a confession, in order to be admissible, must be free and voluntary. Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). We recognize that courts will indulge every reasonable presumption against a waiver of fundamental constitutional rights. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. We also note the statement of the Court in Johnson v. Zerbst, at page 464, 58 S.Ct. at page 1023, "The determination of whether there has been an intelligent waiver of the right * * * must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

■ In considering whether defendant voluntarily and intelligently waived

---

1. We are not governed by this Court's holding in United States v. Dickerson, 413 F.2d 1111 (7 Cir., 1969) which applied prospectively only to interrogations occurring after July 28, 1969.

his right to remain silent by confessing to the F.B.I. agents, we have in mind that the defendant was president of an established business concern, engaged in shipping products such as coal. We note also that defendant was aware of the $25,000 debt limit at the Gorham National Bank which existed during this period. He was further aware, by contrast, of the much greater amount which his company had been receiving through the St. Louis bank, and also of the wholly fictitious character of the documents which he had ordered prepared and transmitted to the Gorham bank. In short, there were ample grounds for the trial judge to believe that defendant realized the consequences of his acts and voluntarily gave his statement to the F.B.I. agents.

Defendant's claim as to his statement being induced by an implied promise of immunity is based mainly on an alleged statement to defendant by F.B.I. agent Graper to the effect that Bruno Koeneman was the culprit that the Government was after. Defendant also relies on an alleged promise of immunity by Assistant United States Attorney Kunin, which was allegedly related to defendant by his attorney.

Mr. Kunin testified and denied there was any promise of immunity made by him. Further, he stated that prior to January 5, 1968, the Government had no information which implicated bank president Koeneman who is now deceased.

■ We hold the findings of the trial court that defendant's confession was not obtained by any promise of immunity are clearly supported by evidence in the record. Admittedly there was a question of credibility involved. The trial court was entitled to believe the testimony of Mr. Kunin and agent Graper. The Court also was entitled to reject the testimony of the defendant on this point. United States v. Ziemer, 291 F.2d 100, 102 (7 Cir. 1961).

Defendant also argues that the evidence in this case is not sufficient to establish that he caused the mailings from the Gorham bank to the St. Louis bank.

In considering the sufficiency of the evidence, the rule, of course, is that the verdict must be sustained if there is substantial evidence taking the view most favorable to the Government to support it. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680.

The Supreme Court construed this portion of the Mail Fraud Statute in Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954), p. 8, 9. They there stated: "Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used."

There is evidence in this record from which the jury could determine that defendant had knowledge of the participation by the St. Louis bank on or before November 18, 1965, and could reasonably have foreseen the mailing of fictitious documents to that bank. On that date, the assistant vice president of the St. Louis bank visited the defendant's company. There were other visits by representatives of the St. Louis bank at intervals of six weeks or less from the fall of 1965 to the spring of 1966. The purpose of these visits was to conduct an examination of the financial records of defendant's company. The defendant generally was personally present during these visits.

■ Prior to such visits, defendant had directed Mr. Oriskovich to falsify the company's financial record. Mr. Oriskovich was aware that the St. Louis bank would participate in the loans to defendant's company. The evidence clearly justified an inference by the jury that the defendant was aware of the participation by the St. Louis bank. We think it was reasonably foreseeable that a transmittal of documents between the Gorham bank and the St. Louis bank would occur by mail. These banks were located in different cities and states. Defendant could reasonably foresee the carrying out of a common business practice.

Defendant urges that the mailings from the Gorham bank to the St. Louis bank were not incidental to defendant's scheme to defraud and cites Parr v. United States, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960). We do not think the *Parr* case is pertinent. The mailings from the Gorham bank to the St. Louis bank included memorandum copies of bills of lading which themselves contained false representations. This was not true in *Parr*. It seems clear to us that the mailing of documents containing false representations is incident to a scheme to defraud.

We hold that the judgment of conviction herein is

Affirmed.