**UNITED STATES of America,**

v.

**John J. CRITCHLEY, Appellant.**

**No. 15176.**

United States Court of Appeals
Third Circuit.

Argued June 7, 1965.

Decided Nov. 30, 1965.

John E. Toolan, Perth Amboy, N. J., (Toolan, Haney & Romond, Perth Amboy, N. J., on the brief) for appellant.

Robert A. Baime, Newark, N. J., (David M. Satz, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before KALODNER, HASTIE and SMITH, Circuit Judges.

KALODNER, Chief Judge.

Following a jury trial, defendant, a union business agent and secretary,[1] was found guilty and sentenced[2] for violation of 18 U.S.C.A. § 1951, the Hobbs Act, upon an indictment which charged him with knowingly and wilfully obstructing and delaying interstate commerce, on October 7 and 8, 1962, "by extorting" $4,000 from Associated Roofing Contractors of New Jersey, a trade organization, whose members are engaged in the roofing business.

The critical issue presented on this appeal is whether the evidence adduced at the trial made out a case of violation of the Hobbs Act, as the Government says it did, or as the defendant contends, it only established his solicitation and acceptance of a bribe for his forebearing from pressing, and initiating, complaints that the employing roofers had failed to comply with job specifications in the performance of their contracts.

In mid-1962, the Newark Housing Authority had a housing development under way. Carmine DeMasi was one of several roofers awarded subcontracts in the project. All were members of Associated Roofing Contractors of New Jersey ("Associated"). Melvin Ziegler was Associated's executive secretary. The defendant's union engaged in a strike against Associated's members in June, July and August, 1962. After the strike was over, the defendant approached DeMasi in mid-September and complained that he "wasn't taking care of him". DeMasi told him he "never asked for any favors and would never pay for any." About a week later the defendant called DeMasi and told him that unless he took "care of him he would go to the chairman of the Housing Authority and would report that there were deficiencies in my job". DeMasi rejected the defendant's request. The defendant renewed his demand the following week and was again turned down. Thereafter DeMasi's foreman reported his men were "laying down". DeMasi phoned the defendant on October 4th and met with him later that day. The defendant then told DeMasi (1) he had made a complaint to Father Finnegan, Chairman of the Newark Housing Authority, charging him with failure to comply with contract specifications; (2) the complaint would be pressed unless he was paid-off; and (3) that DeMasi should advise Associated that the "kid is wised up. He wants a substantial amount of money". DeMasi then contacted Ziegler who called an emergency meeting of Associated for Friday, October 5th. DeMasi reported his conversation with the defendant at the meeting. Associated told Ziegler to negotiate with the defendant. Ziegler testified he met the defendant later in the day and told him "it was a very bad thing that he did to DeMasi in going to Father Finnegan and lodging a complaint because DeMasi had refused to give him money prior to that"; the defendant said, in reply, "Well, we can fix that up * * * we can take care of it if I get the money * * * let them give me $4,000 and I will take care of DeMasi and we will forget it". The defendant also told Ziegler that "if he did not get the money then one by one, dead, he would ruin the roofers". Ziegler, that same night, reported his conversation with the defendant to the Federal Bureau of Investigation. Ziegler called DeMasi the following day, Saturday, October 6th, and reported his conversation with the defendant. He then arranged

---

1. Local No. 4, United States Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association of Newark, New Jersey.

2. Defendant received a two-year suspended sentence and was placed on probation for that period.

with DeMasi to pay the defendant $500 "to hold him off from hurting anyone until I could get the balance of the money together and also to speak to the F.B.I. * * * because I was afraid if I didn't do that he would jump the gun and as he threatened in my conversation with him, he would proceed along the lines with Father Finnegan on Monday morning." DeMasi testified that he met with the defendant on Sunday, October 7th and paid him $500. He reported the payment to Ziegler, who in turn informed the F.B.I. On Monday, October 8th, Ziegler, pursuant to an arrangement with the F.B.I. and under its surveillance, delivered $3500 in marked bills to the defendant who was then placed under arrest.

The foregoing is the sum and substance of the Government's evidence. It may be noted parenthetically that the defendant's complaint to Father Finnegan was that DeMasi had supplied a three-ply roof instead of a four-ply roof, and had failed to install a vapor lock, as called for by the contract specifications.

■ The Government's testimony, viewed in the light most favorable to the Government, as the jury's verdict required,[3] fails to establish the violation of the Hobbs Act charged in the indictment.

The Act provides in relevant part as follows:

"(a) Whoever in any way or degree obstructs, delays, or affects commerce, or the movement of any article or commodity in commerce, by * * * extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

"(b) As used in this section—

*    *    *    *    *    *

"(2) The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

"(3) The term 'commerce' means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; * * *."

The indictment in the instant case charged as follows:

"The Grand Jury in and for the District of New Jersey sitting at Newark, charges:

"That on October 7 and 8, 1962, in the Towns of Irvington and East Orange, State and District of New Jersey,

JOHN J. CRITCHLEY,

Business Agent and Financial Secretary of Local 4, United States Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, did wilfully, knowingly, and unlawfully obstruct, delay and affect interstate commerce and the movement and flow of articles, commodities and materials, in such commerce, particularly slag roof covering from the State of Pennsylvania into the State of New Jersey, by extortion in that he obtained the sum of $4,000.00 from Associated Roofing Contractors of New Jersey, a trade organization, whose members are engaged in the roofing business in New Jersey; Associated Roofing Contractors of New Jersey paid the $4,000.00 through its representatives, Melvin L. Ziegler and Carmine DiMassi; the aforesaid sum of money was extorted with the consent of certain members of Associated Roofing Contractors of New Jersey, and more particularly, Ad-

3. United States v. Sams, 340 F.2d 1014, 1016 (3 Cir. 1965), cert. den. 380 U.S. 974, 85 S. Ct. 1336, 14 L.Ed.2d 270.

vance Roofing Corporation, Atlas Roofing Co., Avon Sheet Metal and Roofing, Frazier Roofing Co., National Roofing, Patti Roofing Co., Sanders Roofing Co., Sloan Roofing Co. and Universal General Sheet Metal Co.; such consent of the aforesaid members of Associated Roofing Contractors of New Jersey being induced by the wrongful use of economic and financial injury to the businesses of the members of Associated Roofing Contractors of New Jersey; the defendant, John J. Critchley, threatened the members of Associated Roofing Contractors of New Jersey with labor disputes, work stoppages and other interruptions in connection with their business operations unless and until the members paid the defendant, John J. Critchley, the said amount of money."

The Government's proof failed to establish that the defendant had on October 7 and 8, 1962, as charged in the indictment, in any manner obstructed, delayed or affected commerce or the movement of any article or commodity in commerce, or that he had on these dates extorted money "by wrongful use of actual or threatened force, violence, or fear, or under color of official right", or that he had then "threatened the members of Associated Roofing Contractors of New Jersey with labor disputes, work stoppages and other interruptions in connection with their business operations unless and until the members paid the defendant. * * *"

■ All that the Government's testimony established was that the defendant had successfully solicited and received a bribe to withdraw his complaint that DeMasi had failed to comply with his contract specifications, and to refrain from making similar complaints with respect to other roofers who were members of Associated.

The making or pressing of the complaint against DeMasi would not in any respect have obstructed, delayed or af-

fected commerce or any article or commodity in commerce, "particularly slag roof" as charged in the indictment, nor would the initiation and pressing of complaints against other members of Associated, have done so.

As was said in Stirone v. United States, 361 U.S. 212, 218, 80 S.Ct. 270, 274, 4 L.Ed.2d 252 (1960):

"* * * there are two essential elements of a Hobbs Act crime; *interference with commerce,* and extortion." (emphasis supplied)

Assuming that the defendant's solicitation and exaction of the $4,000 payment was extortion and not merely a "bribe" there is here absent proof of the element of "interference with commerce".

There was no evidence that the defendant had on the dates charged in the indictment, October 7 and 8, 1962, "threatened" "labor disputes, work stoppages and other interruptions in connection with [the] business operations" of the members of Associated.

■ Nor was there evidence that the payment to the defendant was the product of the reasonably induced fear on the part of members of Associated that he would bring about "labor disputes, work stoppages and other interruptions" with the business operations of the employing roofers. It is this reasonably induced fear which must manifest itself in the payment. United States v. Tolub, 309 F.2d 286 (2 Cir. 1962); Callanan v. United States, 223 F.2d 171 (8 Cir. 1955), cert. den. 350 U.S. 862, 76 S.Ct. 102, 100 L.Ed. 764.

■ The Government urges that demands by the defendant "for a sum of money for labor peace" made upon Emmett Barrett, a member of Associated on August 10, 1962, and his threats on October 5, 1962, to "ruin the roofers", earlier detailed, support the jury's verdict. The ready and dispositive answer is that the indictment here specifically confines its allegations of the defendant's wrongdoing to October 7 and 8, 1962.

■ It is settled law that the defendant cannot be subjected "to prosecution for interference with interstate commerce which the grand jury did not charge". Stirone v. United States, supra, 361 U.S. at page 218, 80 S.Ct. at page 274.

■ It is true that the bill of particulars filed by the Government refers to threats made by the defendant approximately one week prior to October 5, 1962, and to threats made on October 5, 1962. But a bill of particulars is not part of an indictment or information. Krause v. United States, 267 F. 183 (8 Cir. 1920). It can neither add to nor subtract from the indictment nor change the crime charged. United States v. North American Van Lines, Inc., 202 F. Supp. 639 (D.D.C.1962); United States v. Dierker, 164 F.Supp. 304 (W.D.Pa. 1958). To allow the Government to prove threats made prior to the dates listed in the indictment on the strength of a bill of particulars would be tantamount to permitting the indictment to be amended by the bill. An indictment may not be amended except by resubmission to the grand jury. Russell v. United States, 369 U.S. 749, 770, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).

The Supreme Court has indicated that indictments charging violation of the Hobbs Act must be narrowly construed. Thus, in Stirone v. United States, supra, the Court held it to be error for the trial judge to charge on the question of interference with the *exportation of steel from* the state of Pennsylvania when the only interstate commerce mentioned in the indictment was the *importation of sand into* Pennsylvania to be used in building a steel plant there. Similarly, this Court cannot allow the Government to prove interference with interstate commerce by threats made on October 5, 1962, and approximately one week earlier, when the indictment charged interference with interstate commerce by actions of the defendant on October 7 and 8, 1962.

As was said in Stirone v. United States, supra, 361 U.S. at page 218, 80 S.Ct. at page 273:

"The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge. Thus the basic protection the grand jury was designed to afford is defeated by a device or method which subjects the defendant to prosecution for interference with interstate commerce which the grand jury did not charge."

What has been said makes it unnecessary for us to consider other points presented by the defendant on this appeal.

For the reasons stated the Judgment and Order of conviction will be reversed, and the cause remanded to the District Court with directions to enter a judgment of acquittal.