**UNITED STATES of America**

v.

**Louis GOLDSTEIN, Appellant, and
Selma Goldstein.**

**No. 73–1923.**

United States Court of Appeals,
Third Circuit.

Argued Feb. 25, 1974.

Submitted on Rehearing en banc
June 12, 1974.

Decided Aug. 6, 1974.

Hunter, Circuit Judge, dissented and filed opinion in which Seitz, Chief Judge and Van Dusen, Circuit Judge, joined.

Adams, Circuit Judge, dissented and filed opinion.

Ralph F. Keil, U. S. Atty., Bruce L. Thall, First Asst. U. S. Atty., Wilmington, Del., for appellee.

Edmund N. Carpenter, II, David S. Swayze, Richards, Layton & Finger, Wilmington, Del., for appellant.

Argued Feb. 25, 1974

Before HUNTER and WEIS, Circuit Judges, and MILLER, District Judge.

Submitted in banc June 12, 1974

Before SEITZ, Chief Judge, and VAN DUSEN, ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS and GARTH, Circuit Judges.

OPINION OF THE COURT

WEIS, Circuit Judge.

Whether an indictment for a misdemeanor may be amended to correct a material variation between *allegata* and *probata* is a question of first impression in this circuit. In a thoughtful opinion the district court held that an amendment was permissible, but after careful consideration, we feel obliged to come to a contrary conclusion, and we therefore reverse.

The defendant, Louis Goldstein, was indicted by a grand jury on three counts. Counts I and III charged that defendant filed false returns for the years 1964 and 1966 in violation of 26 U.S.C. § 7206(1). The petit jury found Goldstein not guilty on these counts.

Count II charged in part that defendant " . . . by reason of such income

. . . was required by law following the close of the calendar year 1965 and on or before April 15, 1966 to make an income tax return to the District Director of the Internal Revenue . . . . he did willfully and knowingly fail to timely make said income tax return . . . . ."

At the trial it was established that Goldstein had no legal duty to file his 1965 tax return until May 7, 1966, and the trial judge so submitted the case to the jury, in effect allowing an amendment to the indictment. The jury was instructed that the state of mind of the defendant as it might bear on the element of willfulness was material during the period of time leading up to May 7, 1966. After the verdict of guilty on this count, the defendant filed post-trial motions for acquittal and arrest of judgment, asserting a fatal variance between the date set out in the indictment and that established by the government's proof.

The evidence in the district court disclosed that on April 15, 1966, the date on which the indictment alleged that defendant had a duty to file his income tax return, he did in fact submit a Form 2688 requesting an extension of time. This form was returned to Goldstein by the District Director of the Internal Revenue Service on April 27, 1966 bearing a notation that the request was rejected because the defendant's social security number had not been included, but allowing resubmission within ten days if he wished to pursue the matter. Since the defendant did not follow up, the district court found that under the regulations then applicable, the return became due on May 7, 1966.

■ While the rule is generally stated that an indictment cannot be "amended," it may be more precise to say that a change in the indictment which is substantial or material, and not merely one of form, is not permissible. 8 Moore's Federal Practice—Cipes, Criminal Rules ¶ 7.05 [1]. Hence, the first question to

be decided here is whether the alteration in dates from April 15 to May 7, 1966 was material.

■ Ordinarily, a mere change in dates is not considered a substantial variation in an indictment, but an exception exists when a particular day may be made material by the statute creating the offense. As stated in 4 Anderson, Wharton's Criminal Law and Procedure § 1775, "When time is of the essence of the offense, it must be correctly alleged and must be proved as laid. . . ." (footnote omitted). "As has been previously stated, when time is an essential ingredient of the offense charged, it must be laid with exactitude in an indictment, and in such cases must be proved as laid." 5 id. § 2062. (footnote omitted).

The statute involved here illustrates this exception to the general rule. There was no duty imposed on the defendant to file a return before April 15, and an indictment alleging an offense in failing to submit a return on April 10, for example, would not state a crime. An omission to perform an act by April 15 is designated a criminal offense, but only on that date does the crime occur. Conduct and time are thus inextricably intertwined. See United States v. Figurell, 462 F.2d 1080 (3d Cir. 1972). By way of contrast, a bank robbery is a criminal offense at all times, regardless of the date on which it takes place. In that instance a variance of a few days between the dates established by the indictment and proof would be a matter of form and not of substance. The difference between these two situations is apparent.

In requiring an accurate allegation of time, we do not rely on a merely mechanical application of what may seem to be an unduly restrictive common law rule. An indictment is the product of the deliberations of a grand jury, and a brief review of its purposes may serve to explain the policy behind strict adher-

ence to the language used in presenting an accusation of that body.[1]

██ Two of the functions of an indictment are to apprise the defendant of the charge of which he is accused and to provide protection against reprosecution should an acquittal result. The defendant here does not and cannot claim prejudice on either of these elements. But there is a third and very important aspect of the indictment process, and that is the duty of the grand jury to shield a citizen from unfounded charges and to require him to appear in court in defense, only if probable cause has been found by that independent body. Until that prerequisite has been met, the accused is not properly before the court. Thus, a conviction of a defendant cannot be upheld on the basis of facts not found by and perhaps not even presented to the grand jury which indicted him. Russell v. United States, 369 U.S. 749, 770, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).

This screening process of the grand jury is a substantial benefit to an accused person and in the case of serious crimes is constitutionally guaranteed. Its importance has been emphasized by such cases as Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887); Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); and Russell v. United States, *supra*.

The application of the principle was explained in United States v. DeCavalcante, 440 F.2d 1264 (3d Cir. 1971), where this court stated that we must test to see whether there is reasonable assurance from the face of the indictment that the grand jury found probable cause on each of the essential elements which underlie the verdict of the petit jury.

██ One of the crucial factors which must be present to convert late filing into a criminal offense is willfulness. While this term has been generally interpreted to mean a voluntary, intentional violation of a known legal duty, the Supreme Court has emphasized that bad faith or evil motive must exist in tax cases. As Justice Blackmun said in United States v. Bishop, 412 U.S. 346, 361, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941 (1973), "[t]he Court's consistent interpretation of the word 'willfully' to require an element of *mens rea* implements the pervasive intent of Congress to construct penalties that separate the purposeful tax violator from the well-meaning, but easily confused, mass of taxpayers."

However, it is obvious from the face of the indictment here that the grand jury was not aware of the very material fact that the defendant had applied for an extension of time and that as of April 15 he was not required to file his return. And so it was that in focusing on the critical elements of knowledge and bad faith, the grand jurors weighed state of mind on the wrong day and in the wrong circumstances. We can only speculate as to what would have happened had they been told of the request for an extension and the reason for its denial.

Whether willfulness and knowledge would have been found to exist on May 7, 1966 is far from clear because then, the grand jurors would have been required to consider if the failure to resubmit the Form 2688 or file the tax return was caused by inadvertence, lack of knowledge of the new due date, or something other than bad intent. While the due date of April 15 is well-known to the general public, the same cannot be said of the time for filing the return after rejection of a request for exten-

1. In Rex v. Wilkes, 4 Burr, 2527, 2569 (1770), a misdemeanor case, Lord Mansfield remarked, "There is a great Difference between amending *Indictments*, and amending *Informations*. Indictments are found upon the Oaths of a Jury; and ought only to be amended by themselves: But Informations are as Declaratione in the King's Suit. An Officer of the Crown has the Right of framing them originally: and may, with Leave, amend, and in like Manner as the Plaintiff may do."

sion. The form itself advised that there could be a resubmission within ten days but did not state when the return would be due if the extension request was not refiled. Indeed, it was only after a careful review of the statute and regulations in effect in 1966 that the district court concluded that the due date for the return was May 7, 1966.[2] Obviously, the government would have had a heavier burden to establish willfulness and knowledge as of May 7 than it would have had for April 15, 1966 in the absence of an extension.

█ We agree with the district court's conclusion that the conflict in dates is not a mere formality or an innocuous difference of unimportant data but is, rather, a matter of substance. The circumstances which existed on April 15 on which the grand jury concentrated were quite different from those on May 7 to which the petit jury devoted its attention.[3] The indictment indeed had been amended—a procedure clearly not permitted when a grand jury action is constitutionally required. United States v. Williams, 412 F.2d 625 (3d Cir. 1969); United States v. Critchley, 353 F.2d 358 (3d Cir. 1965).

Ex parte Bain, *supra*, and Stirone v. United States, *supra*, considered the inviolability of an indictment against the backdrop of the Fifth Amendment guarantee that:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury. . . ."

The reasoning in those cases was that since the only way that the accused could be brought into court was by indictment of a grand jury, only that body could amend its charges.

Russell v. United States, *supra*, decided a case of a misdemeanor which by statute required the indictment of a grand jury. No constitutional guarantee was there involved, but the court, nevertheless, applied the same standards set out in Ex parte Bain, *supra*, and Stirone, *supra*, holding that Congress had decided that only a grand jury in that instance could determine whether a person should be held to answer in a criminal trial.

█ The constitutional guarantee does not apply in the case *sub judice* since the offense of failing to timely file an income tax return is not considered a capital or infamous crime.[4] It could have been brought by information.[5]

Fed.R.Crim.P. 7 expressly grants the court authority to permit amendment of an information before verdict. The government argues that had this offense been prosecuted by information, it could have been amended and therefore similar liberality should apply to the indictment. It claims support also in Fed.R.

2. In its opinion, the district court said: "If the District Director considered Mr. Goldstein to be in default on April 27, 1966, when he signed and returned Form 2688, the permission for resubmission would be meaningless. Accordingly, I conclude that the District Director's intent must have been to extend the period for the filing of a return or a renewed application for extension until May 7, 1966." Accordingly, the due date for filing the return could not have been earlier than May 7, 1966.

3. *Cf.* United States v. Doelker, 327 F.2d 343 (6th Cir. 1964). There, the question of amendment was not raised in the trial court, and the holding that the variance was not substantial must be considered dictum. Furthermore, in that case, an extension had been

granted to a specified date, and there could be no question of the knowledge of the defendant as to the correct time for filing.

4. Infamous crimes have been defined as crimes for which incarceration in a penitentiary may be imposed. Mackin v. United States, 117 U.S. 348, 6 S.Ct. 777, 29 L.Ed. 909 (1886). 18 U.S.C. § 4083 limits confinements to a penitentiary for any term in excess of one year. Fed.R.Crim.P. 7(a) provides that an offense which may be punished by imprisonment for more than one year shall be prosecuted by indictment. Any other may be prosecuted by indictment or information.

5. 26 U.S.C. § 7203 provides that for a violation, there may be imposed a fine of not more than $10,000.00 and/or imprisonment for not more than one year.

Crim.P. 52, which states that defects or variances which do not affect substantial rights should be disregarded. We do not find these arguments persuasive, and it is on this point that we differ with the district court.

Fed.R.Crim.P. 7 states specifically that an information may be amended but, in what is a significant omission, makes no such provision for an indictment—any indictment. This is not a mere oversight, and as a reading of the rule will show, the committee that drafted it was conscious of the distinction between those offenses where indictment was required and those in which it was optional. Subdivision (e) which provides for amendments is limited to informations, and we follow the rule as it reads.[6]

Rights of an accused in a criminal proceeding which are valuable to him should not be limited or taken away by construction. Where there is doubt, it should be resolved in favor of the defendant.

 Furthermore, it is pertinent to note that there are certain advantages which the government obtains by use of the indictment process. The prosecution is afforded the benefit of discovery through use of process for compelled appearances of witnesses before the grand jury. And in the trial court there is that subtle, though undeniable, stigma attached to a defendant who has been indicted by an impartial grand jury. An information, which is merely an accusation by the prosecuting attorney, an obvious partisan in the trial proceeding, would have less effect on the petit jury.

Having chosen to utilize the indictment process, fair dealing would require that the government assume the burdens as well as the benefits.

In accord with our holding is United States v. Fischetti, 450 F.2d 34, 39 (5th Cir. 1971), cert. denied, 405 U.S. 1016, 92 S.Ct. 1290, 31 L.Ed.2d 478, where the Court of Appeals succinctly stated, "While it is true that the crimes alleged in counts 2, 3 and 4 are misdemeanors, the Government chose to present the case to the grand jury and secure an indictment. Having so elected, it is bound by the principles governing indictments."

The district court erred in refusing the motion for arrest of judgment, and accordingly its judgment will be reversed.

HUNTER, Circuit Judge, with whom SEITZ, Chief Judge and VAN DUSEN, Circuit Judge, join (dissenting):

The majority cites to three functions of an indictment and concludes that the defendant "does not and cannot claim prejudice" on the basis of two of these functions, i. e., to insure that a defendant is "informed of the nature and cause of the accusation"[1] and to protect against double jeopardy should an acquittal result. Indeed, the district court found:

"In this case, as Mr. Goldstein concedes, nothing which has occurred infringes his right to fair notice or his right to be protected against twice being put in jeopardy for the same offense."

---

6. The original Committee Note to Subdivision (e) of Rule 7 observes, "[t]his rule continues the existing law that, unlike an indictment, an information may be amended . . . ." (Citation omitted). 8 Moore's Federal Practice—Cipes, Criminal Rules ¶ 7.01 [2]. *Cf.* Ledbetter v. United States, 170 U.S. 606, 609–610, 18 S.Ct. 774, 775, 42 L.Ed. 1162 (1898) where the Court said, "We have no disposition to qualify what has already been frequently decided by this court, that where the crime is a statutory one it

must be charged with precision and certainty, and every ingredient of which it is composed must be clearly and accurately set forth, and that even in the cases of misdemeanors the indictment must be free from all ambiguity, and leave no doubt in the minds of the accused and the court of the exact offense intended to be charged." (Citations omitted).

1. U.S.Const. amend. VI.

Even had Goldstein not conceded this, the record would amply support this conclusion.

The third function of the indictment process, referred to by the majority, is the "duty of the grand jury to shield a citizen from unfounded charges and to require him to appear in court in defense, only if probable cause has been found by that independent body." But as the majority implicitly concedes, this function has *no relevance* to an indictment which is not constitutionally required.

The fifth amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." Goldstein was not charged with an "infamous" crime[2] and hence cannot rely on the constitutional right to be convicted only as charged by a grand jury. Thus, we are presented with the question whether the principles governing indictments which are constitutionally required apply with equal force to indictments which are not constitutionally required.[3] To my knowledge, neither the Supreme Court nor this Court has ever confronted this question.

In Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), cited by the majority, the Supreme Court sought to clarify the meaning of Fed.R.Crim.Proc. 7(c) which provides: "The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." It reasoned that the sufficiency of the indictment[4] must be judged against the fifth amendment prohibition that a person shall not be subject to double jeopardy and the sixth amendment requirement that an accused "be informed of the nature and cause of the accusation." As to the latter, which might be characterized as the appraisal function of the indictment, it was argued in *Russell* that if the indictment was defective in this respect, it could be cured by a bill of particulars, provided (presumably) that no prejudice would result. The Supreme Court rejected this argument, but for a reason which is particularly revealing and instructive:

> "To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the *guaranty* of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him. See Orfield, Criminal Procedure from Arrest to Appeal, 243.
>
> \*　\*　\*　\*　\*　\*
>
> " 'If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and *without which the Constitution* says "no person shall be held to answer," may be frittered away until its value is almost destroyed. . . . Any other doctrine would place the rights of the citizen,

---

2. See *Majority Opinion* at n. 4.

3. Fed.Rules Crim.Proc. 7(a) provides that any offense other than a felony "may be prosecuted by indictment or information." 8 Moore's Federal Practice ¶ 7.02 (1973) notes that frequently the prosecutor presents a misdemeanor to the grand jury "where a felony is also charged against the same defendant and the prosecutor wishes to

join both classes of offenses in one indictment." This appears to be precisely the situation which occurred in this case.

4. Although the indictment in *Russell* was required only by statute, the Supreme Court held that Congress intended to incorporate the protection of the fifth amendment grand jury requirement. 369 U.S. at 761, 82 S.Ct. 1038.

which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney; for, if it be once held that changes can be made by the consent or the order of the court in the body of indictment as presented by the grand jury, and the prisoner can be called upon to answer to the indictment as thus changed, *the restriction which the Constitution places upon the power of the court, in regard to the prerequisite of an indictment,* in reality no longer exists.' Ex parte Bain, *supra,* 121 U.S. at 10, 13 [7 S. Ct. 781 at 786]. We reaffirmed this rule only recently, pointing out that 'The very purpose of *the requirement that a man be indicted by grand jury* is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge.' Stirone v. United States *supra,* 361 U.S. at 218 [80 S.Ct. 270 at 273]." 369 U.S. at 770–771, 82 S.Ct. at 1050 (emphasis added).

The import is clear. Modification of an indictment, whether by the prosecutor or by the court, is impermissible when it would violate the defendant's right to be convicted only as charged by the grand jury. Equally clear is that Ex Parte Bain, 121 U.S., 12–13, 7 S.Ct. 781 (1887), only held that an indictment brought by a grand jury is a jurisdictional prerequisite *when the constitution requires a grand jury.* Where the defendant, however, as here, possesses no constitutional right to be charged by a grand jury, I do not believe his conviction should be reversed unless the constructive amendment to the indictment substantially affected his right to a fair trial.

The majority disagrees, relying chiefly on Fed.R.Crim.Proc. 7(e) which provides:

"The court may permit an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." [5]

The majority reads into Rule 7(e) a negative inference that Congress intended no amendments to indictments except by the grand jury. Several factors, in my view, weigh against such a construction.

First, as the district court recognized, nothing in the Comments to Rule 7(e) suggests that the drafters addressed themselves to the problem now before us. Therefore, the absence of a rule on amendments to indictments may as readily be interpreted as a Congressional deference to case law development [6] as an unspoken Congressional prohibition against all such amendments. [7] More-

---

5. Had the prosecutor proceeded by information and had he sought an amendment, the record leaves no doubt that an amendment would have been permissible under Rule 7(e).

6. In footnote 6 of its opinion, the majority cites to the original Committee Note to Subdivision (e) of Rule 7 which states that, "[t]his rule continues the existing law that, unlike an indictment, an information may be amended . . . . " The Committee Note cites as authority for this observation Muncy v. United States, 289 F. 780 (4th Cir. 1923). *Muncy,* however, involved the question whether an *information* could be amended. In answering that question in the affirmative, the Fourth Circuit cited to the general rule that informations may be amended but indictments may not be amend-

ed except by the grand jury. As I have noted previously, however, the general rules governing indictments, as articulated by the Supreme Court and this Court, have been formulated in situations where an indictment was *constitutionally required.* Thus, it is quite reasonable to conclude, in my view, that by enacting Rule 7(e), Congress merely incorporated existing law (which had not yet confronted the issue now before us). I therefore believe we should be free to shape the law as justice requires and not feel constrained by any negative inference under Rule 7(e).

7. Since Rule 7(e) is silent on amendments to indictments, logically, if the majority feels compelled to draw an adverse inference, it would seem they should conclude that *any* amendment to an indictment other than by

**534**

over, as the district court noted, the drafters of the federal rules, "in line with the modern view on the consequence of technical errors in criminal proceedings, have elsewhere indicated that rule construction based on factors other than simplicity, fairness and expedition is to be avoided." Rule 2 provides:

> "These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay."

I therefore see no barrier to permitting amendments to an indictment which is not constitutionally required so long as the defendant is not prejudiced.

My major disagreement with the majority, though, involves the role of Rule 52(a) which provides as follows:

> "Harmless error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

Even assuming, *arguendo*, the majority is correct in its view that Rule 7(e) confers by implication, not the right to a grand jury indictment, but the right to be free from amendments to the charge once the prosecutor elects to proceed by indictment, it does not necessarily follow that Goldstein's conviction should be vacated. Violations of some *constitutional rights* are never disregarded, but are presumed to be prejudicial.[8] Violations of other *constitutional rights* may be disregarded where such violation is "harmless beyond a reasonable doubt."[9]

The present situation, however, involved at most—even accepting *arguendo* the majority's position—a violation of a procedural right conferred by the federal rules. Thus, absent constitutional error, Rule 52, in my view, ought to apply,[10] and Goldstein's conviction should be vacated only if the alleged *procedural* error "substantially" affected Goldstein's right to a fair trial.

The majority completely brushes aside Rule 52(a) and adopts a per se rule of prejudice whenever an indictment which is not constitutionally required is amended by other than the grand jury.[11] The majority identifies two forms of prejudice that presumably, in their view, rise to sufficient stature to warrant a prejudice per se rule: 1) "[t]he prosecution is afforded the benefit of discovery through use of process for compelled appearances of witnesses before the grand jury;" and 2) "in the trial court there is that subtle, though undeniable, stigma attached to a defendant who has been indicted by an impartial grand jury."[12] While I do not seek to minimize the possibility of prejudice arising from these factors, I am wholly unpersuaded that this justifies our foregoing the task of balancing any such prejudice against the weight of the evidence of guilt. Goldstein has not been denied

---

the grand jury is impermissible. Yet the majority recognizes that courts have uniformly held that insubstantial or immaterial amendments by a court are permissible. Thus, the majority implicitly recognizes that the rules governing indictments have been shaped by considerations other than the fact that Rule 7 is silent on the subject of amendments to indictments. *Cf.* Russell v. United States, 369 U.S. 749, 761–762, 82 S. Ct. 1038, 8 L.Ed.2d 240 (1962).

8. *See* Chapman v. California, 386 U.S. 18, 23 n. 8, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

9. *See* Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

10. That Rule 52(a) applies to indictments is beyond question. Russell v. United States, 369 U.S. at 762, 82 S.Ct. 1038.

11. The majority correctly notes that the Fifth Circuit is in accord with this holding. United States v. Fischetti, 450 F.2d 34, 39 (5th Cir. 1971), cert. denied, 405 U.S. 1016, 92 S.Ct. 1290, 31 L.Ed.2d 478. *Fischetti*, however, advances no reason for its conclusion; hence, I would reject it as unpersuasive.

12. The majority implicitly concedes that failure to afford Goldstein the protective "shield" of the grand jury is not a basis for a claim of prejudice, since he did not have a right to a grand jury.

any "rights so basic to a fair trial that their infraction can never be treated as harmless error." Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967).

Consequently, absent any constitutional error, which the majority has not identified, I agree with the district court that Rule 52(a) applies to this case. Furthermore, I agree with the district court that Goldstein has not shown any prejudice that has "substantially affected" his rights to a fair trial. In my view, the judgment of the district court, therefore, should be affirmed.

ADAMS, Circuit Judge (dissenting):

I dissent for the reasons set forth by Judge Hunter in his discussion of the harmless error provisions of Rule 52(a).