**UNITED STATES of America**

v.

**Francis J. ETTORRE.**

**Crim. A. No. 74–171.**

United States District Court,
E. D. Pennsylvania.

Jan. 10, 1975.

Solomon Fisher, Philadelphia, Pa., for defendant.

Alan M. Lieberman, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

## OPINION

DITTER, District Judge.

The defendant was charged with willfully failing to file personal and corporate income tax returns for a three year period in violation of 26 U.S.C. § 7203. After a two-day trial without a jury I found defendant guilty on all six counts of the information. Before me are his post-trial motions.[1]

Francis J. Ettorre, during the years in question, 1969, 1970, and 1971, was a certified public accountant with a substantial private practice. In 1968, 1969, and 1970, he was also part owner of Panett Computer Service Corporation and was responsible for its accounting work and the preparation of its tax returns. As the fortunes of the company waned, Ettorre assumed more and more responsibility for its operation. Not only did he extend substantial funds to Panett, but also spent a great deal to time juggling creditors and attempting to obtain new business. Finally the company failed.

During this period, Panett did not file required federal and state tax returns nor did Ettorre file his personal federal tax returns. However, it was estab-

---

1. Defendant's motion and supplemental motion to find facts separately are sufficiently covered by my findings of facts in this case. F.R.Cr.P. 23(c).

lished that defendant had in the past timely filed his returns and those of his clients. Moreover, during the period in question, Ettorre applied for and received an extension until June 15, 1970, in which to file his 1969 personal income tax return and until May 15, 1971, in which to file his 1970 personal income tax return.

Mr. Ettorre explained that he did not file his personal tax returns because he was too busy with all the worries and problems he had at Panett (N.T. 179) Although he knew he would have to get around to it, would have to complete them, he just disregarded the corporate tax returns (N.T. 173–74). He did not file his personal returns for 1970 and 1971 because they depended upon the return for 1969 being done—and that was still not completed (N.T. 179, 181). He also admitted that he knew of the obligation to file his tax returns by April 15 of the following year—or at the end of whatever extension had been granted (N.T. 180).

In determining the defendant had acted willfully, I concluded that he knew of the time requirements for the filing of tax returns but for the years involved had deliberately failed to comply. I further held, however, that Ettorre did not intend to defraud the Government and always intended to file the returns at some undetermined time in the future.

■ The principal issue before me is whether my interpretation of the word "willfully" as used in this section of the Code, 26 U.S.C. § 7203, is correct. I adopted the explanation found in United States v. Litman, 246 F.2d 206, 208–209 (3d Cir. 1957), where it was held that willfulness existed when a taxpayer intended not to fulfill the obligation of timely filing of which he was well aware. Citing Spies v. United States, 317 U.S. 492, 496, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943), Judge Hastie stated that punctuality is important to the fiscal system and there are sanctions to assure punctual as well as faithful performance of the duty to file tax returns.

Defendant, relying on United States v. Bishop, 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973), argues that the Government must prove beyond a reasonable doubt that he had a "bad purpose" and "evil motive" in order to find him willful. The Supreme Court in *Bishop* simply held that "willfully" had the same meaning in both felony and misdemeanor sections of the tax statutes. In discussing a specific definition of the word, Justice Blackmun states:

> the word "willfully" in these statutes generally connotes a voluntary, intentional violation of a known legal duty. It has formulated the requirement of willfulness as "bad faith or evil intent," *Murdock*, 290 U.S. at 398, 54 S.Ct. at 226, . . .

United States v. Bishop, supra 412 U.S. at 360, 93 S.Ct. at 2017. Defendant contends that this language required the court to find bad faith or evil motive before convicting him.

A close reading of *Bishop* and United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933), fails to support defendant's position. Both cases make clear that the purpose of the Court's emphasis on bad faith and evil motive was to distinguish a criminal violation of the tax statutes from mere negligence or honest misunderstanding. Justice Roberts points out in *Murdock,* supra at 396, 54 S.Ct. at 226, that:

> Congress did not intend that a person, by reason of a bona fide misunderstanding as to his liability for the tax, as to his duty to make a return, or as to the adequacy of the records he maintained, should become a criminal by his mere failure to measure up to the prescribed standard of conduct.

This distinction between negligence or misunderstanding on the one hand, and intentional criminal violation on the other, is the essence of Justice Blackmun's statement in *Bishop*. After citing Spies v. United States, supra 317 U.S.

at 496, 63 S.Ct. at 367, he reiterates the proposition that innocent errors or frank differences were not intended by Congress to be the basis of criminal prosecution:

> The Court's consistent interpretation of the word "willfully" to require an element of *mens rea* implements the persuasive intent of Congress to construct penalties that separate the purposeful tax violation from the well-meaning, but easily confused, mass of taxpayers.

United States v. Bishop, supra 412 U.S. at 361, 93 S.Ct. at 2017.

A review of the facts in this case leads to only one conclusion: the defendant did not file his returns because he was preoccupied with matters he deemed to be more important than his legal obligations. He was not a taxpayer who had some frank difference with the I.R.S., nor one who relied upon some prior decision to make a point on which he would contest his obligation. Neither was he confused nor misled by some intricacy of the law. This was a taxpayer who expected his compliance with the law as to truthfulness would negate his failure to comply with the requirements as to timeliness. The situation is all the worse—and the more convincing—because this defendant's entire professional life was intertwined with tax returns and their exigencies.

I agree with the Court of Appeals for the Ninth Circuit when it characterizes the term "evil motive" as merely a convenient shorthand used to distinguish liability based upon conscious wrongdoing from liability based upon carelessness or mistake. United States v. Hawk, 497 F.2d 365, 368 (9th Cir.), cert. denied, 419 U.S. 838, 95 S.Ct. 67, 42 L.Ed.2d 65 (1974). See Cooley v. United States, 501 F.2d 1249, 1252–1253 (9th Cir. 1974). Judge Aldisert of this Circuit has pointed out that evil intent or bad purpose are not magic words which must be invoked in each criminal tax case.

United States v. Malinowski, 472 F.2d 850, 855 (3d Cir.), cert. denied, 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973). An act is done willfully if done with specific intent to do something the law forbids and the defendant knew he was withholding from the Government information to which it was entitled.

■ Defendant further alleges that even if the Government's definition of willfully is correct, there is no evidence to show that he intentionally failed to file. However, this is what he himself stated (N.T. 173–74). The Third Circuit has consistently "equated evil motive with a specific intent to do that which is proscribed." United States v. Malinowski, supra. The fact that Ettorre intended to file his returns and pay his taxes in the future is of no assistance in negating his specific intent to violate the statute. Sansone v. United States, 380 U.S. 343, 354, 85 S.Ct. 1004, 1011, 13 L.Ed.2d 882 (1965).

Ettorre next argues that he was not required to make the returns charged in Counts III, IV, V and VI. Counts III to V charge Ettorre, as president of Panett Computer Service Company, with willfully and knowingly failing to file employer's quarterly federal tax returns. Defendant claims that Panett rather than he should be charged.

Section 7203 states:

> Any person required under this title to pay any estimated tax or tax, or . . . to make a return . . . who willfully fails to pay [or] make such return . . . at the times required by law or regulations, shall, . . . be guilty of a misdemeanor . . .

Section 7343 defines person:

> as used in this chapter includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

There is no dispute that Panett was required to file the quarterly returns mentioned in the information. Moreover, it is uncontradicted that Ettorre was president and sole operating officer of Panett during the period in question (N.T. 154–55). Previously he testified that as secretary-treasurer he was responsible for filing tax returns (N.T. 151). This responsibility was never delegated to another. Finally, Ettorre admitted that he knew that he was ultimately personally responsible for the taxes (N.T. 171).

It is an inescapable conclusion, after reviewing the relationship of Panett and Ettorre, that the defendant was the person, as defined by 26 U.S.C. § 7343, who was under a duty to file all the required tax returns. See United States v. Jasper, 352 F.Supp. 254 (D.Del.1972).

Defendant contends that his conviction should be reversed since the Government failed to meet its burden of proving his mental capacity. He argues that it is clear he suffered from a mental disease and if he is not legally insane the evidence was still admissible to show that his conduct was not willful.

The legal standard I must use is set forth in United States v. Currens, 290 F.2d 751, 774 (3d Cir. 1961):

at the time of committing the prohibited act the defendant, as a result of mental disease or defect, lacked substantial capacity to conform his conduct to the requirements of the law which he is alleged to have violated.

The test is not whether the defendant suffered from a mental disease or defect but whether the disease or defect caused a lack of *substantial capacity to conform his conduct to the requirements of the law.*

Once a defendant raises the issue of mental capacity, the burden shifts to the Government to prove sanity beyond a reasonable doubt. United States v.

Currens, supra at 761. Defendant presented one psychiatrist and the Government presented one psychiatrist and one psychologist as expert witnesses. All three experts concluded that Ettorre suffered from some form of mental defect or disease. The Government experts, however, testified that in their opinion he could conform his conduct to the law.

The issue of sanity is one for the trier of fact to decide. The testimony of defendant's psychiatrist is not conclusive even when the Government offers no expert rebuttal testimony. United States v. Lutz, 420 F.2d 414 (3d Cir.), cert. denied, 398 U.S. 911, 90 S.Ct. 1709, 26 L.Ed.2d 73 (1970). It is not the number of expert witnesses that is determinative of this question; rather it is the quality and credibility of their testimony which must be weighed. United States v. Handy, 454 F.2d 885, 888 (9th Cir.), cert. denied, 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972).

It is uncontested that Ettorre was under a great deal of stress and suffered from some mental abnormalities during the period in question. But the evidence establishes that defendant at the time of the offense was running a business on a daily basis, teaching school and paying state and local taxes. Thus, I conclude he had the requisite capacity to conform his conduct to the requirements of the law, that is, to file his returns in a timely way.

Next, defendant contends that Counts I and II must be dismissed because amendments to Counts I and II of the information allowed by the court substantially prejudiced his rights. It is uncontested that while Counts I and II specify April 15 as the date each personal income tax return was due, the true date was somewhat later since Ettorre received extensions for both years.

In United States v. Goldstein, 502 F.2d 526 (3d Cir. 1974) the Court of Appeals en banc, held that an indictment could not be amended to show that the defendant requested and received an extension

in which to file his tax returns. The court held that the alteration was substantial and material in a case where willfulness is the central issue.

The court based its decision on the fact that the amendment violated the most important function of an indictment. That function is the protection of a citizen from unfounded charges by requiring probable cause to be proven to an independent body, a grand jury. When they are uninformed of a material fact such as the extension of filing date for income tax returns it is impossible for them to properly pass on an indictment. See also United States v. Radowitz, 507 F.2d 109 (3d Cir. 1974).

■ Unlike *Goldstein*, however, I am not faced with an amendment to an indictment but rather to a criminal information. In this case the protection of a grand jury was not available to Ettorre. The information, as to Counts I and II, was sufficient to inform defendant of the charges against him and sufficient to protect him from double jeopardy. Furthermore, it afforded him ample opportunity for discovery and utilization of the filing extensions at trial. Therefore, under F.R.Cr.P. 7(e), the amendment of the information was proper.

■ Defendant's allegation that my denial of certain portions of his motion for a bill of particulars was error is without merit for two reasons. First, he shows no prejudice by my ruling. Second, the Government is not required to reveal its trial theory to the defendant at the pre-trial stage.

■ Defendant's remaining objections are directed to a number of evidentiary rulings which I made in the course of his trial. First, defendant asserts that I erred in admitting the testimony of special agent Howard L. Merkel, of the Internal Revenue Service, that defendant had told him that he was responsible for handling Panett's tax returns. Such statement, rather than being a conclusion of law, as defendant contends, actually was a statement of fact, and was plainly admissible as a voluntary out-of-court statement to a Government agent. Second, defendant contends that refusal to permit his counsel to cross-examine Agent Merkel concerning selective prosecution was error. The short answer to this objection is that selective prosecution is not per se violative of the Constitution. See Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962). Next, defendant asserts that I erred in allowing Agent Merkel to testify concerning defendant's filing of the corporation's 941 forms. This evidence was highly relevant to the issue of defendant's intent, and in light of defense counsel's thorough cross-examination on this point, its admission did not constitute an abuse of the trial court's discretion. Fourth, defendant argues that I erroneously admitted payroll records of certain Panett employees. These documents were identified by Government witnesses as having been prepared by them during business hours and for business purposes. Defendant's unfamiliarity with them was irrelevant with respect to their admissibility. Finally, defendant contends that I erred in refusing to allow impeachment of the testimony of one of the Government's experts, Dr. Frank Hoffman, on the basis of statements attributed to a Philadelphia assistant district attorney in a 1971 newspaper article. This attempted impeachment constituted collateral double hearsay, and was inadmissible under sound rules of evidence.

Accordingly, I conclude that defendant's motions must be denied.