**UNITED STATES of America,
Plaintiff/Appellee,**

v.

**Frank P. LENCH, Defendant/Appellant.**

**No. 86–1086.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 12, 1986.

Decided Dec. 30, 1986.

Marion L. Jetton, U.S. Dept. of Justice, Washington, D.C., for plaintiff/appellee.

Richard Haas, Moses Lasky, Lasky, Haas, Cohler & Munter, San Francisco, Cal., for defendant/appellant.

Before WRIGHT, SNEED and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge.

Frank P. Lench was convicted of obstructing justice in violation of 18 U.S.C. § 1503 (1984), by concealing information subpoenaed by two grand juries. He was sentenced to two years in prison. Lench attacks his conviction on many grounds, among them that his conduct was not proscribed by section 1503, that there was insufficient evidence to sustain the conviction and that there was an impermissible variance between indictment and proof.

### Facts

Lench was the Regional Vice President in charge of the Martinez, California office of the Howard P. Foley Co. (Foley), a nationwide electrical contracting firm. In May 1982, a federal grand jury in the District of Columbia investigating possible antitrust violations in the electrical construction industry issued a subpoena duces tecum directed to Foley. The subpoena requested a wide variety of documents relating to the activities of certain employees, including Lench, from 1972 to 1982. Among the requested materials were "notebooks prepared or used in the course of employment," records of telephone calls to or from these employees and documents relating to unsuccessful Foley bids of more than $1 million.

Foley's General Counsel, Robert Gants, wrote Lench on June 17, 1982. He enclosed a copy of the subpoena and provided detailed instructions for complying with it. On June 28, 1982, Gants sent Lench a memo stating that the subpoena had been modified to permit Foley to submit bid summary sheets for certain projects in lieu of all documents used in preparing bids.[1]

On June 29, 1982, Lench sent Foley's attorneys various documents, including bid summary sheets for unsuccessful bids beginning in January 1981. In a cover letter, he represented that his office did not maintain records of telephone calls or copies of phone bills and that "[o]ur files of estimates of past bids only extends [sic] back to January of 1981." Evidence at trial showed that both of these statements were false. Relying on the information Lench provided, Foley's attorneys executed an affidavit representing to the grand jury that Foley had searched its files and provided all subpoenaed documents.

Rick Erwin, who worked for Lench when the June 1982 letter and memo from Gants arrived, testified that Lench instructed him to destroy certain materials which could document bid rigging prior to 1981 and that Lench said he would take care of other incriminating evidence, including telephone bills. It is unclear whether Erwin actually destroyed any documents. He did, however, fill 14 boxes with pre–1981 bid information and marked each box with green tape in the shape of an X.

In January 1984 a federal grand jury in San Francisco was investigating bid rigging. It issued a subpoena duces tecum to Foley demanding documents similar to those requested by the Washington, D.C., grand jury but covering the period 1976 to 1984. Lench received a copy of the subpoena together with an explanation from Foley's attorneys. Shortly afterward, he learned that Foley had agreed to cooperate with the grand jury and that Thomas Carey, another Foley vice president, would conduct the search of Lench's files for subpoenaed documents. The next day, a Saturday, Lench, working alone and using his own car, moved to his garage the 14 boxes marked with green X's and a box containing photocopied telephone bills. The bills

---

**1.** Bid summary sheets contain total figures for various costs including materials, labor, taxes, and sub-contracting. They can show whether the bid had been rigged.

documented extensive contacts between Foley's Martinez office and competitors around the time bids were due.

In March 1984, after the search of the Martinez office, one of Foley's attorneys, Robert McDermott, provided the government with a copy of the compliance affidavit for the Washington subpoena plus additional documents responsive to the San Francisco subpoena. McDermott was not aware of the 15 boxes in Lench's garage or of certain records Lench maintained in his home. Lench did not provide those documents to Carey or bring them to McDermott's attention.

Erwin testified before the San Francisco grand jury in March 1984 about the boxes of documents that had not been produced and about his discussions with Lench concerning concealment and destruction of evidence. Based on this testimony, the government obtained a search warrant for Lench's home. The search produced the 15 boxes in Lench's garage, 13 notebooks in which Lench had made business-related notations and a green folder containing bid summary sheets.

Lench was convicted after jury trial on two counts of obstructing justice, one based on his concealment of documents from the Washington grand jury and the other based on his concealment from the San Francisco grand jury.

### Discussion

#### A. Scope of 18 U.S.C. § 1503 [2]

We start with *United States v. Rasheed*, 663 F.2d 843 (9th Cir.1981), *cert. denied*, 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982), where we held that failure to provide documents requested by a grand jury subpoena duces tecum violated 18 U.S.C. § 1503. Lench attempts to distinguish *Rasheed*, arguing that his obligation to produce documents never matured because the return date under the subpoena was indefinitely extended by agreement between Foley's lawyers and the government. But Lench tells only half the story. In his

June 17, 1982, letter, Foley's Vice President Gants advised Lench that "[w]e were able to negotiate a short extension of time within which to respond to this subpoena but the necessary search will, nevertheless, require your prompt attention. It is important that the documents be forwarded to Washington no later than July 2, 1982." Instructions accompanying the letter noted that "[w]e must locate, assemble and produce all documents responsive to the subpoena, as modified by our discussions, within a very short time. We must eventually produce all responsive documents along with a sworn statement from me describing how we conducted our search."

Foley's obligation under the subpoena was changed somewhat by the agreement; it was not nullified. Foley's arrangement with the government obligated Foley's employees to respond fully, accurately and promptly to the lawyers' request, with the understanding that the information provided would then be passed on to satisfy the subpoena. Lench was warned that "[t]his is a serious exercise [and there] are substantial criminal penalties for intentional disregard of the terms and conditions of a grand jury subpoena." Nevertheless, he failed to provide the information requested and lied to Foley's attorneys, advising them that the information did not exist.

■ These actions constitute at least an endeavor to conceal, if not outright concealment. Under section 1503, that is all that is necessary to obstruct justice. *United States v. Washington Water Power Co.*, 793 F.2d 1079, 1085 (9th Cir.1986); *see also Osborne v. United States*, 385 U.S. 323, 333, 87 S.Ct. 429, 434, 17 L.Ed.2d 394 (1966).

#### B. Sufficiency of the Evidence

■ Lench contends that no rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of ob-

---

**2.** 18 U.S.C. § 1503 provides, in relevant part: "Whoever corruptly ... obstructs, or impedes, or endeavors to ... obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

struction of justice beyond a reasonable doubt. He far overstates the point. We have examined the record and find the evidence against Lench not merely adequate but overwhelming.

Lench, by himself and in his own car, moved 15 boxes filled with documents to his garage the day after learning that Carey would be conducting a search of the Martinez office. He then specifically denied the existence of these documents in his letter to Foley's counsel.

His motive for concealing evidence was to avoid personal criminal liability for bid rigging. Erwin and others testified that Lench had rigged some of Foley's bids.[3]

In the face of this evidence, it was rational for the jury to disbelieve Lench's story that he (1) misunderstood the subpoenas and the detailed instructions for complying with them; (2) was innocently safeguarding the documents in his home during renovation of the Martinez office; and (3) was ready to produce them at the request of the grand jury.

■ Lench's alternate argument that his conviction is unsupported because significant evidence was improperly admitted is without merit. First, his contention that the notebooks should have been excluded because they are personal records is frivolous. Lench does not dispute that he used these records during the course of his business; their status as his personal property does not protect them from the reach of the subpoena. See United States v. MacKey, 647 F.2d 898, 901 (9th Cir.1981). The June 17, 1982, letter from Gants made this much clear, stating that "[t]he subpoena calls for a review of your individual files, including files maintained by your secretary and files kept in your personal office, even though you may consider these to be 'personal' records" (emphasis in original).

■ Lench's claim that the phone bills were immaterial because the government obtained microfilm copies and should have been satisfied misses the point. The government can insist on redundant information to assure completeness. In any case, at issue is not whether the government needed the information, but whether Lench tried to conceal evidence he had an obligation to provide.

Finally, Lench argues that all the evidence found in his house should have been excluded because the search warrant was based on an affidavit that omitted material facts. United States v. Stanert, 762 F.2d 775, 781 (9th Cir.1985). The "facts" that he alleges were omitted—for example, that the subpoenas had been modified to eliminate the return dates and that submission of bid logs fully satisfied the duty to submit bid information—are merely his theory of the case. Their omission from the affidavit was unobjectionable.

### C. Variance Between the Indictment and the Evidence

■ Lench's last major contention is that there was an impermissible variance between the indictment and the evidence because the indictment stated that the subpoenas had particular return dates whereas the evidence showed that the return dates had been changed by agreements between Foley and the government. But the return dates merely describe the subpoenas; the indictment does not charge Lench with failing to comply with those dates. Accordingly, his reliance on United States v. Goldstein, 502 F.2d 526 (3d Cir.1974) (en banc), is misplaced. In Goldstein, the charge of failure to file a tax return by April 15 was a material element of the offense as defined by statute. Here, by contrast, failure to provide the documents by the return date was not a material element of the

---

**3.** Lench contends that the district court erred in forbidding him to impeach Erwin's testimony by introducing evidence about Erwin's alleged mental disorder. The court did not abuse its discretion in refusing to permit impeachment in this manner because Lench has not shown that Erwin's supposed mental disorder affected his

ability to testify truthfully and accurately. See United States v. Kizer, 569 F.2d 504, 505–06 (9th Cir.), cert. denied, 435 U.S. 976 (1978); Skinner v. Cardwell, 564 F.2d 1381, 1388–89 (9th Cir. 1977), cert. denied, 435 U.S. 1009, 98 S.Ct. 1883, 56 L.Ed.2d 392 (1978).

crime. The variance was therefore immaterial.

### Conclusion

We have carefully considered Lench's other contentions and find them to be devoid of merit. Accordingly, we affirm the judgment of the district court.