UNITED STATES of America, Plaintiff-Appellant,

v.

Charles G. CASTOR, William T. Robinette, Henry Y. Dein and James A. James, Defendants-Appellees.

No. 76–2068.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 24, 1977.

Decided July 8, 1977.

Rehearing and Rehearing En Banc Denied Aug. 9, 1977.

·Terrance A. Norton, Dept. of Justice, Strike Force, Chicago, Ill., James B. Young, U. S. Atty., Indianapolis, Ind., for plaintiff-appellant.

Philip R. Melangton, Jr., Indianapolis, Ind., Bernard Fensterwald, Jr., Washington, D. C., Donald A. Schabel, F. Boyd Hovde, Indianapolis, Ind., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, and SPRECHER and BAUER, Circuit Judges.

BAUER, Circuit Judge.

The Government appeals, pursuant to 18 U.S.C. § 3731, the district court's dismissal of a mail fraud indictment returned against the defendants. The issues for our decision are whether the indictment alleges a fraudulent scheme within the scope of the mail fraud statute, 18 U.S.C. § 1341, and whether the indictment alleges mailings in furtherance of the alleged scheme. We hold that the indictment charges both elements of the offense and reverse the dismissal.

## I.

The indictment charges the defendants with fourteen substantive counts of mail fraud and one count of conspiracy to commit mail fraud in connection with a fraudulent scheme to procure a number of newly available permits to operate retail package liquor stores.

The details of the alleged scheme are as follows: In 1972 forty-five new package liquor store permits became available in Indianapolis, Indiana as a result of an Indiana Court of Appeals ruling that, in applying the statutory limit of one permit for each 5,000 persons or fraction thereof, the population of the Consolidated City of Indianapolis, which includes Indianapolis and several surrounding communities, rather than the population residing within the old city limits, controls the number of permits to be issued. *Indiana Alcoholic Beverage Commission v. Baker,* 153 Ind.App. 118, 286 N.E.2d 174 (1972).

Approximately 120 applications were filed by persons seeking the new permits. The defendants are charged with fraudulently inducing the Indiana Alcoholic Beverage Commission (IABC) and the Marion County Local Board (MCLB) to issue permits to persons who did not intend to operate package liquor stores and who, upon the issuance of the permits, transferred them to persons and entities of the defendants' choosing.

The indictment names twelve persons whom the defendants allegedly caused to sign and file with the IABC applications for permits, as well as other documents which concealed the defendants' interest in the applications.[1] Permits were issued to the twelve.

The indictment further states that, after the permits were issued, the defendants caused certain documents containing false representations to be filed with the IABC in order to receive permission to relocate nine of the approved stores. Included were sham leases and papers stating that the named applicants intended to operate liquor stores at the new premises.

The indictment goes on to allege that the defendants, using fraudulent methods and concealing their economic interest in the liquor store permits, induced the IABC to approve transfers of eleven of the permits to corporations under the defendants' control.

Finally, the indictment alleges that, after the transfer of the permits to the defendants' corporations, the defendants sought and received IABC approval to transfer the stock of the corporations to defendant James.

---

1. The applicants who allegedly acted in the defendants' interest were plaintiffs in the suit establishing the availability of the new permits, and, due to their participation in the litigation, were purportedly given preference in the granting of permits. Transcript of Oral Argument on Motion to Dismiss at 73–74 (October 1, 1976).

Each of the fourteen mail fraud counts sets forth a separate mailing that allegedly was in furtherance of the scheme. Count I charges a mailing from the IABC to George Rowles, one of the "fronts" who purportedly obtained permits for the defendants, notifying Rowles that the MCLB would hold a hearing on his application.

Counts II through VI charge the mailing of notices by the IABC to five of the "fronts" that the IABC had voted to issue them liquor permits.

Count VII charges the mailing by the IABC to F. Pen Cosby, an attorney retained by defendant Robinette to represent a number of applicants for package liquor store permits, of a list of persons whose permit applications were to be processed by the IABC and the MCLB.

Count VIII charges a later mailing by the IABC to Cosby of a list of persons who had been issued permits by the IABC.

Counts IX through XI, XIII and XIV charge the mailing by the IABC of notices to five of the "fronts" that their applications were incomplete.

Count XII charges a mailing by the IABC to James Griffin regarding his intention to lease property to one of the "fronts."

The district court dismissed the indictment on the grounds (1) that it did not allege a scheme or artifice to defraud within the meaning of the mail fraud statute, and (2) that the mailings alleged to be in furtherance of the scheme were not sufficiently connected to the scheme to support federal criminal jurisdiction.

## II.

### Scheme or Artifice to Defraud

■ The district court found that the scheme alleged in the indictment did not satisfy the statutory requirement of being a "scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises". 18 U.S.C. § 1341.[2] The court construed the statute as requiring a fraudulent scheme to have as its object the "obtaining of money or property." It reasoned that the statutory phrase "or for obtaining of money or property by means of false or fraudulent pretenses, representations, or promises" modifies and limits the preceding phrase "any scheme or artifice to defraud," and thus does not describe an independent type of scheme cognizable as an offense.

Applying its construction, the district court found that, as a matter of law, the scheme charged in the indictment could not constitute a scheme under the mail fraud statute because the liquor store permits that were the object of the alleged scheme are clearly not money and are not considered property under Indiana law.

The Government, arguing that the "or" between the two phrases in 18 U.S.C. § 1341 should be read in its ordinary disjunctive sense, contends that the district court's construction is erroneous. Under the Government's construction, the two phrases describe two different types of schemes that are cognizable under the mail fraud statute, the first proscribing schemes "to defraud" generally, and the second proscribing schemes "for obtaining of money or property by means of false . . . pretenses" particularly.

**2.** 18 U.S.C. § 1341 reads in full:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purposes of executing such scheme or arti-

fice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

Alternatively, the Government contends that the fraudulent scheme charged in the indictment constituted an offense even under the district court's construction of the mail fraud statute because the permits obtained through the scheme constituted "property" within the meaning of the statute.

We need not consider the Government's alternative argument, for the district court's construction of 18 U.S.C. § 1341 has been previously rejected by this Court in *United States v. Isaacs,* 493 F.2d 1124, 1149–50 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974), and *United States v. Joyce,* 499 F.2d 9, 22 (7th Cir.), *cert. denied,* 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974). In both cases we held that the mail fraud statute is not limited to fraudulent schemes that contemplate the actual loss of money or property. Accord, *United States v. Brown,* 540 F.2d 364, 374 (8th Cir. 1976); *United States v. States,* 488 F.2d 761 (8th Cir. 1973), *cert. denied,* 417 U.S. 909, 94 S.Ct. 2605, 41 L.Ed.2d 212 (1974).[3]

Moreover, this interpretation has been consistently followed by this Circuit in a line of cases holding that a scheme to defraud the government or a private party of an employee's honest and faithful services is proscribed by 18 U.S.C. § 1341. *United States v. Bush,* 522 F.2d 641 (7th Cir. 1975), *cert. denied,* 424 U.S. 977, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976); *United States v. Keane,* 522 F.2d 534 (7th Cir. 1975), *cert. denied,* 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746 (1976); *United States v. Bryza,* 522 F.2d 414 (7th Cir. 1975), *cert. denied,* 426 U.S. 912, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976); *United States v. Barrett,* 505 F.2d 1091 (7th Cir.), *cert. denied,* 421 U.S. 964, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975); *United States v. George,* 477 F.2d 508 (7th Cir.), *cert. denied,* 414 U.S. 827, 94 S.Ct. 49, 38 L.Ed.2d 61

(1973). Although the opinions in these cases do not concentrate on the language of 18 U.S.C. § 1341, the cases hold that a mail fraud violation can be asserted "even in the absence of an object susceptible to measurement in terms of money or property," *United States v. Bryza, supra* at 421.

The defendants attempt to distinguish the above cases by arguing that the mail fraud schemes in those cases caused or could have caused at least potential pecuniary loss to its victims and that no such loss could have occurred here. Defendants contend that, even absent a requirement that the scheme contemplate its victims *actually* lose money or property, there must be at least a *probability* of pecuniary injury to the individuals defrauded for the scheme to be cognizable under 18 U.S.C. § 1341. *United States v. Dixon,* 536 F.2d 1388, 1399–1401 (2d Cir. 1976); *United States v. Regent Office Supply Co.,* 421 F.2d 1174, 1182 (2d Cir. 1970).

■ We are not persuaded that the prior cases embody any such requirement. Nevertheless, we may assume *arguendo* that such a requirement exists, for we are convinced that, even if this Court's prior decisions contemplate that the alleged scheme have the probable or potential effect of causing its victims to lose money or property, the potential pecuniary loss resulting from the scheme alleged here is no different in kind from the potential effects attributable to schemes previously found cognizable under the statute.

In *United States v. Bush, supra* at 648, for example, in which we reserved the question of whether the mail fraud statute requires that the scheme's victims suffer some form of pecuniary injury, we found that the mere possibility of future pecuniary injury would be sufficient to meet any pecuniary-injury requirement read into the statute. Bush, a City of Chicago official,

---

**3.** The defendants, particularly Robinette, presented extensive arguments for their interpretation of the statute based upon previous versions of the statute and older cases, most of which were decided in the first quarter of this century. We find these arguments unpersuasive for the reasons stated by Judge Murray in

*United States v. Mandel,* 415 F.Supp. 997, 1011–1012 (D.Md. 1976). In view of Judge Murray's comprehensive opinion repudiating the identical arguments presented to us, we feel it unnecessary to deal with the arguments here.

hid his interest in an advertising firm and used his influence to persuade other officials to award contracts to the firm. In affirming his conviction, we stated that, had the City known of Bush's interest in the firm, "it might have been able to obtain a better contract." *Id.*

In the case at hand, the alleged scheme involves no more speculative pecuniary injury to its victims than the injury in *Bush.* The indictment charges that the defendants' scheme to garner several package liquor store permits through the use of "fronts" defrauded other persons who applied for the permits. The fraud diminished the other applicants' chances to obtain the new permits, both because the Indiana authorities were not likely to grant twelve permits to one individual, and because the defendants' "fronts" were purportedly given preference in the granting of the new permits because they were plaintiffs in the litigation that established the new permits' availability. This diminished opportunity to obtain permits reduced the other applicants' chances to make profits through the operation of package liquor stores or through the sale of liquor store permits,[4] and this type of potential pecuniary injury is, in our view, indistinguishable from the injury suffered by the City of Chicago in *Bush*—the diminished opportunity to obtain a financially favorable contract.

Moreover, the diminishment of the other applicants' opportunity to obtain permits alleged here is analogous to the injury suffered by the victims of the mail fraud scheme found to constitute an offense in *Gregory v. United States,* 253 F.2d 104 (5th Cir. 1958). In *Gregory* a company sponsored a contest in which the contestants were to predict the winning team in each of twenty collegiate football games, the contest winner to receive a Cadillac automobile. The defendant won the contest by submitting predated entries after the games were played. The loss of opportunity suffered by the other contestants, the victims in *Gregory,* is almost identical to

the loss suffered by the other applicants in the instant case.

Inasmuch as we find that the scheme charged in the indictment involves potential pecuniary injury to at least one category of victims, the other applicants for licenses, we need not, in reviewing the district court's dismissal of the indictment, consider the actual or potential harm to the other alleged victims, the IABC and the MCLB.

### III.

*Mailings*

To support federal jurisdiction in a mail fraud prosecution, 18 U.S.C. § 1341 requires the use of the mails "for the purpose of executing [the] scheme or artifice [to defraud]."

The district court found, and the defendants argue to us, that the indictment failed to charge this element of the offense because it is not apparent on the face of the indictment that there is a sufficient nexus between the mailings and the alleged scheme.

■ We believe the district court asked the wrong question in considering this aspect of the indictment. The question is not whether the indictment particularly alleges sufficient facts from which a jury could find that the mailings charged were in furtherance of the scheme, but rather whether the Government conceivably could produce evidence at trial showing that the designated mailings were for the purposes of executing the scheme. *United States v. Sampson,* 371 U.S. 75, 76, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962). The resolution of the question of whether the mailings alleged were in furtherance of the scheme must await trial

> "unless it so convincingly appears on the face of the indictment that as a matter of law there need be no necessity for such delay." *United States v. Feinberg,* 50 F.Supp. 976, 977 (E.D.N.Y. 1973), *aff'd,* 140 F.2d 592 (2d Cir.), *cert. denied,* 322

---

4. The permits apparently can be sold for prices exceeding $20,000, far above the cost of obtain-

ing them. Transcript of Oral Argument on Motion to Dismiss at 118 (October 1, 1976).

U.S. 726, 64 S.Ct. 943, 88 L.Ed. 1562 (1944).

■ The Government need not allege the subordinate evidentiary facts by which it intends to prove the "in furtherance" element of the crime charged, and an indictment setting out the mailings charged and alleging that they were in furtherance of the scheme should not be dismissed as insufficient on its face unless there is no conceivable evidence that the Government could produce at trial to substantiate its "in furtherance" allegation.

Looking at the mailings charged in the indictment in light of the above standard, we hold that the district court erred in finding, at this stage of the proceedings, that the mailings were insufficient to support federal jurisdiction.

*Causation*

■ It is well settled that a defendant "causes" a mailing for purposes of 18 U.S.C. § 1341 either when he makes use of the mails or when he causes someone else to do so. In *Pereira v. United States*, 347 U.S. 1, 8–9, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954), the Supreme Court held:

"Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used."

■ Inasmuch as all the mailings charged in the indictment were letters from the Indiana Alcoholic Beverage Commission either notifying persons connected with the scheme of matters related to the granting of the permits or asking such persons for information regarding the permit applications, we cannot say as a matter of law that the mailing of such letters could not reasonably be foreseen by the defendants. Nothing in the indictment indicates that the charged mailings were not part of the normal processing of applications or were not sent in the ordinary course of the Commission's business.

*In Furtherance of the Scheme*

Having determined that the indictment sufficiently alleges that the defendants "caused" the charged mailings, we must determine whether the charged mailings could have been made in furtherance of the fraudulent scheme.

■ Under the statute, the mailings must be "for the purpose of executing the scheme." However, "[i]t is not necessary that the scheme contemplate the use of the mails as an essential element." *Pereira v. United States, supra* at 8, 74 S.Ct. at 362. Faced with these vague and somewhat ambiguous statements, we reviewed the relevant cases on the question in *United States v. Rauhoff*, 525 F.2d 1170, 1176 (7th Cir. 1975), and arrived at the following formulation:

"Mailings are in furtherance of a scheme if they are incidental to an essential part of the scheme. *Pereira v. United States*, 347 U.S. 1, 8–9, [74 S.Ct. 358, 98 L.Ed. 435] (1954). Under this definition, mailings made after the scheme has reached its fruition are not in furtherance of the scheme, *United States v. Maze*, 414 U.S. 395, [94 S.Ct. 645, 38 L.Ed.2d 603] (1974), nor are mailings which conflict with the purposes of the scheme and have little effect upon the scheme, *United States v. Staszcuk*, 502 F.2d 875 (7th Cir. 1974). On the other hand, mailings made to promote the scheme, *United States v. Joyce*, 499 F.2d 9 (7th Cir.), *cert. denied*, 419 U.S. 1031, [95 S.Ct. 512, 42 L.Ed.2d 306] (1974), or which relate to the acceptance of the proceeds of the scheme, *United States v. Issacs*, 493 F.2d 1124 (7th Cir.), *cert. denied*, 417 U.S. 976, [94 S.Ct. 3183, 41 L.Ed.2d 1146] (1974), or which facilitate concealment of the scheme, *United States v. Sampson*, 371 U.S. 75, [83 S.Ct. 173, 9 L.Ed.2d 136] (1962), have been found to have been in furtherance of the scheme under this definition."

Further, we held in the more recent case of *Ohrynowicz v. United States*, 542 F.2d 715 (7th Cir.), *cert. denied*, 429 U.S. 1027, 97 S.Ct. 650, 50 L.Ed.2d 630 (1976), that a mailing which is a normal concomitant of a

transaction that is essential to the fraudulent scheme can be in furtherance of the scheme.

■ In light of these precedents, we find that the mailings charged in the indictment could be found by a jury to be "for the purposes of executing the fraudulent scheme" and thus can withstand a motion to dismiss the indictment.

The mailing in Count I is a notice of a hearing on a permit application sent to one of the "fronts" by the IABC. Defendants argue that, like the hearing notice found to be insufficiently connected with a mail fraud scheme in *United States v. Staszcuk*, 502 F.2d 875, 880–881 (7th Cir. 1974), this mailing conflicted with the scheme, rather than promoted it, because it provided an opportunity for the public to scrutinize the "front's" permit application and thus might have led to revelation of the fraud. We find *Staszcuk* distinguishable because that decision followed a full trial of the mail fraud charges and was based on trial evidence that showed that concealment of the fraudulent scheme from the public was an essential aspect of the scheme charged in the case. In the case at hand, we cannot determine without a trial record whether a public hearing necessarily conflicted with the scheme or whether, as the Government may show at trial, the mailing of a hearing notice was a normal concomitant of the permit granting process, see *Ohrynowicz v. United States, supra* at 718–19, or whether the mailing was used to inform the defendants that the scheme was proceeding as planned.

The mailings charged in Counts II through VI, notices to the "fronts" that the IABC had voted to issue them permits, like the notice of hearing in Count I, could have been normal concomitants of the permit granting process or could have told the defendants that the scheme was proceeding as planned. Moreover, these mailings are very similar to the mailing in Count XIII in *United States v. Isaacs*, 493 F.2d 1124, 1152 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974). That mailing, a letter from the Illinois Racing Board to

the defendants' corporation, informed the defendants that they had been granted racing dates. This indicated to the defendants that they had succeeded in their fraudulent scheme to obtain racing dates without disclosing their interest in the corporation. The mailing was held to be in furtherance of the scheme as a "necessary sequel to the concealment of the [defendants'] beneficial interest" in the corporation.

Counts VII and VIII charge two mailings from the IABC to F. Pen Cosby listing the applicants for the liquor permits and the persons who had been awarded permits. While the relationship of these mailings to the scheme is not entirely clear from the face of the indictment, the nature of the mailings is such that we cannot say as a matter of law that the Government could not produce evidence at trial to show that they were in furtherance of the scheme. Perhaps it was essential to the planning of the scheme that the defendants knew how many applicants there were and where their stores were to be located. This latter knowledge, in particular, could have been crucial in acquiring sites for the later transference of the locations of the permits, inasmuch as the Indiana authorities might have been reluctant to transfer the permits to sites that were close to those where other stores were scheduled to operate. This certainly constitutes a possible purpose of this mailing that could be shown at trial.

The mailings in Counts IX through XI, XIII and XIV were notices from the IABC to several of the "fronts" or their transferees that certain of their applications lacked essential information. These mailings could have aided the defendants by informing them that the scheme was proceeding as planned. They might even have been generated by deliberate omissions intended to cause the IABC to send the notices so the defendants could gauge the progress of the application process.

Finally, the letter in Count XII from the IABC to a lessor of property listed as the site at which one of the "fronts" wanted to operate his store could be in furtherance of the scheme. Like the letters to the

"fronts" asking about missing items, this letter could have told the defendants that the scheme was going as planned or could have told them some particular fact about the permit granting process. There is nothing in the indictment indicating that, as a matter of law, this letter could not have been in furtherance of the scheme.

As is clear from the foregoing discussion, we cannot say, from the face of the indictment, that no evidence could be presented at trial to show that the charged mailings furthered the alleged fraudulent scheme.

In summary, we hold that the indictment charges a scheme or artifice to defraud within the meaning of 18 U.S.C. § 1341 and charges that the mails were used for the purpose of executing the charged scheme. Accordingly, we reverse the district court's dismissal of the indictment and remand the case for further proceedings.[5]

Reversed and remanded.

---

5. Circuit Rule 18 shall be applied by the district court on remand.