The UNITED STATES of
America, Plaintiff,

v.

Norby WALTERS and Lloyd
Bloom, Defendants.

No. 88 CR 709.

United States District Court,
N.D. Illinois, E.D.

Jan. 23, 1989.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

At issue before the court is defendant Lloyd Bloom's ("Bloom") motion to dismiss the indictment for lack of venue in the Northern District of Illinois. Venue for this indictment is predicated upon the mail fraud counts which allege various mailings of eligibility lists, statements of eligibility and statements of financial support to the Big Ten Conference offices in Schaumburg, Illinois. Bloom claims that venue is improper here because these mailings "were not *in furtherance* of the fraud and thus do not violate 18 U.S.C. § 1341 [the mail fraud statute]." (Defendant Bloom's motion and memorandum to dismiss indictment for lack of venue, p. 1) (emphasis added) In support of venue here, the government argues that a jury could find that the mailings at issue were for the purposes of executing the alleged fraudulent scheme. For reasons stated in this memorandum opinion and order, Bloom's motion to dismiss the indictment for lack of venue is denied.

Under Federal Rule of Criminal Procedure 18 "the prosecution shall be had in a district in which the offense was committed." The mail fraud statute specifically provides that the mailings must be "for the purpose of executing the scheme." 18 U.S. C. § 1341.

In ruling on this motion to dismiss, the court considers the standard set forth in *United States v. Castor*, 558 F.2d 379, 384–85 (7th Cir.1977), *cert. denied*, 434 U.S. 1010, 98 S.Ct. 720, 54 L.Ed.2d 752 (1978):

> The Government need not allege the subordinate evidentiary facts by which it intends to prove the "in furtherance" element of the crime charged, and an indictment setting out the mailings charged and alleging that they were in furtherance of the scheme should not be dismissed as insufficient on its face unless there is no conceivable evidence that the Government could produce at trial to substantiate its "in furtherance" allegation.

Bloom asserts that neither the defendants nor the student-athletes are alleged to have personally mailed the forms nor did they know of the particular mailings. Although the indictment alleges that the universities, not the students, mailed the forms to the Big Ten Conference, we find Bloom's approach to mail fraud too narrow. *See, e.g.*, Indictment, Count I, ¶ 27(a)(8); *see also United States v. Wormick*, 709 F.2d 454, 461 (7th Cir.1983).

█ It is well settled that a defendant "causes" a mailing for purposes of 18 U.S. C. Section 1341 either when he makes use of the mails or when he causes someone else to do so. *Castor, supra*, 558 F.2d at

385. In *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954), the Supreme Court held:

> Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he "causes" the mails to be used.

The indictment alleges that the defendants participated in a scheme to defraud various universities by signing student-athletes to representation agreements, giving them loans in violation of NCAA regulations, and concealing those loans from the universities. The scheme allegedly allowed student-athletes to obtain scholarships from the universities to which they were not entitled because of the loans and the representation agreements.

The mailings alleged in the indictment include the Statements of Eligibility and Statements of Financial Support completed by each of the student-athletes. *See,* Indictment, Count I, ¶ 25(b)(1)–(5). These statements, which each student-athlete submitted to his university, are allegedly Big Ten Conference forms, not university forms. Each university was required to send eligibility lists compiled from these statements to the Big Ten Conference. *See* Indictment, Count I, ¶ 25(b)4. Clearly, the use of the mails to send documents ultimately to the headquarters of the Big Ten Conference is reasonably foreseeable. Thus, the indictment sufficiently alleges that the defendant "caused" the mailings.

■ Even if defendant did "cause" the mailings to a location in this district, Bloom argues that the mailings of the documents to the Big Ten Conference by the universities did not *further* the alleged fraud scheme.

In *Wormick, supra,* 709 F.2d at 462, the Seventh Circuit summarized the law in this area:

> Mailings are in furtherance of a scheme if they are incidental to an essential part of the scheme. *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358 [362–363], 98 L.Ed. 435 (1954). Under this definition, mailings made after the

scheme has reached its fruition are not in furtherance of the scheme. *United States v. Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), nor are mailings which conflict with the purposes of the scheme and have little effect upon the scheme. *United States v. Staszcuk,* 502 F.2d 875 (7th Cir.1974). On the other hand, mailings made to promote the scheme, *United States v. Joyce,* 499 F.2d 9 (7th Cir.), *cert. denied,* 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974), or which relate to the acceptance of the proceeds of the scheme, *United States v. Isaacs,* 493 F.2d 1124 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974), or which facilitate concealment of the scheme, *United States v. Sampson,* 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962), have been found to have been in furtherance of the scheme under this definition.

(*quoting United States v. Rauhoff,* 525 F.2d 1170, 1176 (7th Cir.1975))

This court finds that a jury could reasonably conclude that the mailings in this case are an essential part of the scheme. The purpose of the alleged scheme was to obtain scholarship monies to cover the cost of tuition, room, board and fees for the school year from the universities. Had these forms not been presented for submission to the Big Ten Conference, the student-athletes would not have been eligible to receive the scholarship monies from the universities. *See, e.g.,* Indictment, Count I, ¶ 25(b)(4).

The mailings of the forms from the universities to the Big Ten Conference office were in furtherance of the scheme in that they facilitated concealment of the scheme. If the universities or the Big Ten Conference had been aware of the allegedly fraudulent forms, the universities would have immediately terminated the student athletes' football scholarships. *See e.g.,* Indictment, Count I, ¶ 25(b)(2)–(5).

Bloom primarily relies on *United States v. Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974); *United States v. Staszcuk,* 502 F.2d 875 (7th Cir.1974), *cert. denied,* 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.

2d 56 (1975); and *United States v. Kwiat*, 817 F.2d 440 (7th Cir.1987), to support his position. We find cases cited by Bloom distinguishable.

In *Maze, supra,* the defendant had charged motel services on a stolen credit card. The mailings that formed the basis of the mail fraud counts were the mailings of sales slips for purchases from the motels to the bank that had issued the card. The Court found:

> ... [T]he mailings here were directed to the end of adjusting accounts between ... the victims of respondent's scheme. Respondent's scheme reached fruition when he checked out of the motel, and there is no indication that the success of his scheme depended in any way on which of his victims ultimately bore the loss.

*Id.* 414 U.S. at 402, 94 S.Ct. at 649.

In *Staszcuk, supra,* the defendant, a city alderman, was convicted of mail fraud for accepting money in exchange for his approval of zoning changes. The mailings that formed the basis for the mail fraud were form notices setting the date for a public hearing. The Seventh Circuit noted:

> ... the notices had little effect on the procedure of passing the amendments ... from either a procedural or a factual point of view, the committee's mailing of notices seems too remote from defendant's scheme to support a connection under section 1341.

*Id.* at 880–81.

Finally, in *Kwiat, supra,* the mail fraud convictions were based on the charge that a president of a bank and other defendants perpetrated a scheme to defraud the bank's depositors and stockholders. The mailings were mortgage instruments sent by the recorder of deeds to the bank. The Seventh Circuit held:

> The mailings in this case ... did not make the fraud possible or facilitate it. They did not help [defendants] rake in the money from the Bank ... [or] hide their delicts or postpone the day of reckoning.

*Id.* at 443.

Unlike *Maze, Staszcuk,* and *Kwiat,* the documents mailed in this case were essential to the perpetration and concealment of the alleged fraud. The success of the scheme depended on the student-athletes receiving their scholarship monies. The mailings postponed the day of reckoning.

We therefore conclude that the government could conceivably produce evidence at trial showing that the mailings were for the purpose of executing the scheme. *See Castor, supra,* 558 F.2d at 384 ("The resolution of the question of whether the mailings alleged were in furtherance of the scheme must await trial."). Because the mailings charged in the indictment are sufficient to support venue, defendant Bloom's motion to dismiss for lack of venue is denied.